THEODORE BREITENBERGER

V.

JOHN SCHMIDT ET AL.

*Conspiracy—Trespass—Gist of the Action—Failure of Proof—Limitations.*

1.   Conspiracy is an unlawful combination or agreement between two or more persons to do an act unlawful in itself, or a lawful act by unlawful means.

2.   If the conspiracy alleged in the declaration at bar is of force sufficient to connect the earlier wrongs charged to have been committed in pursuance of it, which as independent grounds of action are barred by the statute of limitations, with later ones not so barred, so as to prevent the application of the statute to the former, then the charge of conspiracy is of the gist of the action and must be proved.

3.   The evidence in the case at bar was wholly insufficient to establish the charge of conspiracy between the defendants.

4.   If it be conceded that conspiracy was not of the gist of the action, but that the action was simply for the several acts charged in the declaration, then the statute of limitations, which was pleaded, was a complete bar.

Breitenberger v. Schmidt.

5. In either view of the case there was no evidence sufficient to support a verdict for the plaintiff, and the instruction to the jury to find for the defendants was proper.

[Opinion filed September 20, 1890.]

In ERROR to the Circuit Court of Adams County; the Hon. WILLIAM MARSH, Judge, presiding.

Mr. GEORGE W. FOGG, for plaintiff in error.

" It is the settled law and practice of this State, sanctioned by repeated decisions of this court, that the court, trying a cause, shall not instruct the jury as to the weight of evidence —*i. e.*, what it does or not, in fact, prove—provided it tends to establish the case attempted to be made. If offered by the plaintiff, he has a right that the jury shall weigh it and pass upon it, without the interference of the court." Smith v. Gillett, 50 Ill. 300.

" This court has repeatedly held that where a plaintiff has offered evidence which tends to establish his right to recover the court has no right to take the evidence from the consideration of the jury or to instruct them to find one way or the other. It has always been held by this court that it is the province of the jury to weigh the evidence, and the court has no right to invade their province." Holmes v. C. & A. R. R. Co., 94 Ill. 444.

" Instructing the jury, on motion, to find a verdict for the defendant, is in effect the same thing as sustaining a demurrer to the evidence. In either case, the court holds, that, admitting all the evidence tends to prove, it is not sufficient, in law, to sustain the action." Doane v. Lockwood, 115 Ill. 494.

" On such a motion the function of the court is limited strictly to determining whether there is or is not evidence legally tending to prove the fact affirmed, *i. e.*, evidence from which, if credited, it may be reasonably inferred, in legal contemplation, that the fact affirmed exists, laying entirely out of view the effect of all modifying or controverting evidence." Frazer v. Howe, 106 Ill. 563; Ward v. City of Chicago, 15 Ill. App. 98; Penn. Company v. Conlan, 101 Ill. 93.

An instruction allowing non-suit for want of evidence, concedes the truth of plaintiff's testimony and all the inferences lawfully to be drawn therefrom. And it is error to grant a non-suit, if the action may be sustained by any allowable deduction from proven facts. Synear v. Wharton, Ct. N. J. 1886 reported in 2 Central Rep. 215, 452, 565, 758 and notes and cases there cited ; Abbott's Trial Ev., 123. Upon an undisputed state of facts, the court may render judgment, or direct the verdict which the law requires, without the aid or advice of the jury. Abbott's Trial Evidence, 109, and the numerous cases there cited. Not only must the facts be undisputed, but the conclusions to be drawn from them must be such as are undisputable. Jones v. B. & Ohio R. Co., Carter, C. J., in Sup. Ct. District of Columbia, reported in 3 Central Rep. 289, and cases there cited.

Whether there was any evidence was for the court; if any, its sufficiency was for the jury. McGrann v. Pittsburg & Lake Erie R. Co. (Pa.), 2 Central Rep. 570, and cases there cited.

When the court dismisses or directs a verdict in a case on motion of defendant, the plaintiff is entitled to the most favorable view of which the evidence is susceptible, on the determination of whether such dismissal or direction was or was not erroneous. And where there is any evidence tending to prove the issues for the plaintiff, the facts should be submitted to the consideration of the jury. Second Nat. Bank v. Dix, 2 Cent. Rep. 760; Abraham v. Mitchell, Ibid. 785.

When the bill of exceptions shows that plaintiff, to sustain the issues on his part to be sustained, offered evidence tending to prove those issues, it is error to instruct the jury to find for the defendant. Will v. Lee, 3 Western Rep. 280.

Where there is any evidence tending to show a right of recovery, a peremptory instruction to the jury to find for the defendant is manifest error. The test is laid down thus: If the plaintiff make a case but for the defendant's testimony, a directing instruction is erroneous. Hill v. Campfield, 56 Pa. State, 451; Stephens v. Brooks, 2 Bush. 137; McLown v. Craig, 39 Mo. 151; Well's Questions of Facts, 441.

The practice has always been to sanction a motion to exclude the evidence of the plaintiff, on the trial, when he has introduced all his testimony, and before the defendant has entered upon his defense. If, however, defendant fails to make such a motion and introduces evidence, he can not afterward move for a non-suit. It has always been held by this court, that it is the province of the jury to weigh the evidence, and the court has no right to invade their province. Holmes v. C. & A. R. R. Co., 94 Ill. 439.

Evidence on the part of the defendant, who moves for a verdict of not guilty, will not be considered. Moving for the direction of a verdict, withdraws all evidence and admissions, favorable to him, from the consideration of the court. L. S. & M. S. Ry. Co. v. Ins., 4 N. E. Rep. 21, 23.

It appears from the records that the final judgment was not rendered in the suit of Schmidt et al. v. Brass, Breitenberger et al., in St. Louis, wherein the original judgment was had while Breitenberger was in prison, as testified by him, and wherein the moneys on the Brass note was collected, until March 17, 1885, or nearly a year after the commencement of this suit. See record of said cause, at page 454 of abstract.

A claim for damages from the seepage of water from a reservoir is not barred by the statute of limitations, because the seepage began more than six years before the action was brought, since the injury has been continuous and is a continuing injury and damage. Reed v. State Ct. of Appeals, (N. Y.), April 1, 1888, reported in 15 N. E. Rep. 735.

An instruction telling the jury that the crime of conspiracy was complete the moment of the adoption of the resolution to enter into such conspiracy, and that the statute of limitation would then commence to run, is erroneous. The statute would begin to run only from the time of the commission of the last overt act on the part of any of the defendants in furtherance of the purposes of the conspiracy. Ochs' Case, 124 Ill. 399.

A conspiracy to injure the business, or to deprive another of his property, may be proved either expressly, or by the proof of facts from which the jury may infer it; and in nearly

all cases it is shown by the latter means. While it would be desirable to show the private consultations and intimacy of the conspirators, yet it is not necessary to do so in order to the introduction of evidence of overt acts of individual conspirators, as the jury may be authorized to find a conspiracy implied from those very separate overt acts. It is unnecessary to prove that the defendants ever met together, and, in terms, agreed upon the end or means to be pursued. It is enough, if they acted for the common purpose and with the same wrongful end in view. Ochs' Case, 124 Ill. 399.

An action on the case, in the nature of an action of conspiracy, will lie against one, or, if brought against many, all but one may be acquitted. Skinner v. Gunton, 1 Saunders, 228, *et seq.;* Parker v. Huntington, 2 Grey, 124 ; Eason v. Westbrook, 2 Murf. (N. S.) 329 ; S. C., 3 U. S. Digest (1st series), page 359, Sec. 108.

Messrs. EMMONS & WELLS, for defendant in error John Schmidt.

Error will not always reverse. Crowley v. Crowley, 80 Ill. 469.

The court may instruct jury to find for defendant where evidence of plaintiff is not sufficient to support a verdict. Teft v. Ashbaugh, 13 Ill. 602; Simmons v. Chicago & Tomah R. R. Co., 110 Ill. 340; Lake Shore and M. S. R. Co. v. O'Conner, 115 Ill. 254; Doane v. Lockwood, 115 Ill. 490.

Such instruction is usually given at close of plaintiff's case, but there is no reason or authority why it may not be given after evidence is heard on behalf of defendant. Bartclott v. International Bank, 119 Ill. 259 ; Shaffer v. Travelers Ins. Co., 22 N. E. R. 589; The People ex rel. Greenwood v. The Board of Supervisors of Madison Co., 125 Ill. 334; Continental Life Ins. Co. v. Rogers, 119 Ill. 474; Abend v. Terre Haute and Indianapolis R. Co., 111 Ill. 202.

The essence of conspiracy, so far as it justifies a civil action for damages, is a concert or combination to defraud or to cause other injury to persons or property which actually results in damage to the person or property of the person

injured or defrauded.    Dwight C. Place v. Minster, 65 N. Y. 89.

If the acts complained of were lawful then there could be no conspiracy.    Payne v. Railroad Co., 13 Lea, 507.

The unlawful combination must first be shown, before the acts or statements of one can be shown in furtherance of the conspiracy as the act of all.    Brinkley v. Platt, 40 Md. 529.

Mere silent approval of an unlawful act does not render one liable as a conspirator.    Brannock v. Bouldin, 4 Ired. 61.

Nor presence as a spectator.    Bene v. Christ, 4 Ill. App. 351.

Nor membership in an association, unless he intentionally aided in the prosecutions.    Johnson v. Miller, 63 Ia. 529.

To make one liable for false arrest by another, mere approval is not enough; he must have encouraged it in some way. Cooper v. Johnson, 81 Mo. 483.

To entitle the declarations of a co-conspirator to admission, the conspiracy must be first proved *aliunde*.    State v. Daubert, 42 Mo. 239.

And the facts must be co-incident with the conspiracy; a narrative after the conspiracy is terminated, so far as concerns the subject-matter of the declaration, is inadmissible.    Wharton, 2 Vol. Ev., Sec. 1206.

PLEASANTS, P. J.    This was an action of trespass on the case, commenced by plaintiff in error on April 30, 1884. The declaration sets forth at great length that plaintiff, being a skilled mechanic and machinist, induced by an advertisement of the defendants, or some of them, for such a person to take charge and direction of their machine shop and iron foundry at Quincy, Illinois, came to see them and was induced to enter into a copartnership with defendants Schmidt and Pfau Sr., on the first day of April, 1875, for the purpose of carrying on a general foundry and machine business, by the terms of which said copartners were to contribute respectively the sum of $4,000 cash, and were to own all the property of the firm equally and jointly, and to share equally in the profits and losses of said partnership business; that it was

afterward further agreed between them, that as plaintiff could raise but little, if any, ready money, he should give to his copartners, in lieu of the cash, his promissory note for $4,000, with interest at ten per cent, payable in four years from date, and secured by deed of trust upon his individual one-third interest in the real estate of the firm, and that he executed and delivered such note and deed accordingly; that by further agreement he put into the concern as its property, certain tools and implements, of the value of $500, and was to be credited that amount on account thereof upon his said note, and being the only member of the firm who was skilled in the business or was to give to it his personal attention, he was to receive for his services a salary of $1,500 per year, of which $8 was to be paid to him weekly in cash and the residue credited on said note until the same should be fully paid; that in conformity with these agreements he became an equal partner in said business, and about the 15th of April, 1875, entered actively upon the duties devolved upon him as the manager and superintendent of the work and business of said firm, and so continued until about the first of April, 1876; that during that time the defendant Pfau Jr., a son of Pfau Sr., acted as bookkeeper, accountant and business agent of the firm, and by reason of said relationship to one of its members assumed unauthorized control and direction of its business and affairs, against the expressed wish of plaintiff, but with the tacit or expressed approval of his copartners, and that in time his interference and misconduct became so offensive to plaintiff and injurious to the business, that plaintiff was compelled to and did, at the date last mentioned, suspend the running and work of the shops in order that steps might be taken to stop this interference and some competent person found to take the place of said Pfau Jr.; that touching that matter, no satisfactory arrangement was, or could be, arrived at with the other copartners, and therefore plaintiff, on the 15th day of April, 1876, closed the firm shops, discharged the employes, and so far as he was concerned, discontinued the business; that prior to said last mentioned date, plaintiff owned and kept in his desk at said shop, two promissory notes, of the value, respect-

Breitenberger v. Schmidt.

ively, of $2,000 and $1,800, and that before the commencement of said partnership, he was, as defendant in execution upon a judgment of a justice of the peace of St. Louis, indebted to one Eccles in the sum of $255.35, and that on May 17, 1875, at the instance and request of said Pfau Jr., he intrusted and delivered to him a draft for and of the value of $278.10, to apply the proceeds, as far as necessary, to satisfy said judgment at said city of St. Louis, to which place said Pauf Jr., was then about to go on business of said firm.

Yet the said defendants, well knowing the premises, unlawfully intending and maliciously contriving together that they might unlawfully and wrongfully deprive and despoil the said plaintiff of his said property and estate, and so impoverish and defraud him, did on said 5th day of April, 1876, at, etc., unlawfully, wickedly and maliciously conspire together, and from thence hitherto continuing the said conspiracy and trespass, on divers other days and times between that day and the day of the commencement of this action, have conspired and do now conspire together, to unlawfully deprive and defraud the plaintiff of his rights and interests in and to the real and personal property of said copartnership and of his said promissory notes and the moneys therein named, and take and convert the same to their own use. It then avers that to the end and with the intent that they might thereby accomplish the purposes of their said unlawful, wicked and malicious conspiracy against him, " the said defendants or some of them," procured an assignment of said justice's judgment to be made to one Abraham M. Gardner, and procured a transcript thereof to be made and sent to an attorney at law at Quincy, and directed him to bring suit thereon before an acting justice of the peace in said city, by reason whereof a suit was so brought and judgment obtained against plaintiff for $205.35, and caused an execution thereon to be levied on his undivided third of the personal property of said copartnership, and the same to be sold and secretly bid off and purchased for said defendants at $50, being less than one-tenth of its cash value; that to prevent the plaintiff from being present at said sale, he was given to understand by defendants,

or some of the..... that they would bid off the said interest for his account, at a greatly less sum than he could, and that he was thereby induced to absent himself from said sale; that the defendants, or some of them, caused a transcript of said judgment to be filed in the office of the clerk of the Circuit Court of said county of Adams, and a writ of *fieri facias* against plaintiff to be issued thereon and levied upon his interest in the real estate of said firm, and the same to be sold thereon to them, or some of them, for $5, being less than one five-thousandth part of its cash value, which said proceedings and sale were wholly unknown to plaintiff until after the time allowed for redemption had expired; that said defendants, or some of them, feloniously stole from his desk said two promissory notes, and converted the same to their own use; that afterward upon his demand of them for the return of said notes, said defendants, or some of them, procured his arrest wrongfully, maliciously and without probable cause, upon a peace warrant issued by a justice of the peace of said city of Quincy; and in like manner caused him to be indicted and imprisoned in the county jail at St. Louis, on their false charge against him of falsely personating said Pfau Jr., and thereby unlawfully obtaining a promissory note of said defendants or one or more of them, when the said note was one of the two notes of plaintiff above mentioned; and afterward in like manner caused him to be indicted and imprisoned in Adams county, Illinois, upon their false and malicious complaint for burglary and larceny; and afterward in St. Louis for falsely personating; and afterward caused him to be impleaded in a certain proceeding before the Probate Court in and for the city of St. Louis, Missouri, and in the Circuit and Appellate Courts of said city, wherein the defendants sought to obtain the moneys owing to plaintiff on one of his aforesaid promissory notes, which said proceeding is still pending and undetermined; and that afterward, to wit, on July 5, 1881, at said city and county of St. Louis, the defendants, or one of them, wrongfully, maliciously and without probable cause, procured plaintiff to be indicted and imprisoned on the charge of perjury; that upon all of said

Breitenberger v. Schmidt.

criminal complaints and proceedings the plaintiff had been fully acquitted and discharged before the commencement of this action; and that the defendants, or some of them, committed the said several wrongs against plaintiff for the sole purpose of carrying out and accomplishing the object of their said conspiracy.

The declaration concludes with a statement to show how, in what respect and to what extent the plaintiff has been injured, and lays the damages at $10,000.

A demurrer thereto having been overruled, defendants severally pleaded not guilty, that the cause of action did not accrue within five years, and that it did not accrue within two years. The court sustained a demurrer to the third of these pleas, and the trial was upon issues made on the others. After all the evidence was in the jury were instructed to find for the defendants and did so. The question here is upon the propriety of that instruction.

This is said to be an action on the case in the nature of a conspiracy. Conspiracy is an unlawful combination or agreement between two or more persons to do an act unlawful in itself, or a lawful act by unlawful means. If the conspiracy alleged in this declaration is the gist of the action, and is of force sufficient to connect the earlier wrongs charged to have been committed in pursuance of it, which, as independent grounds of action would be barred by the statute of limitations, with the later ones, which are within the period limited by the statute, so as to prevent its application to the former, then it must be so material as to make its proof essential to a rightful recovery. That the court below held it to be the gist of this action is the only explanation that occurs to us of its ruling on the demurrer to the plea that the cause did not accrue within two years; for conspiracy, as a cause of action, is certainly not included in the section which limits the time for suit to two years, but might be held to be within the clause " and all civil actions not otherwise provided for," in the section which fixes the limitation at five years.

We find in this record no such evidence of any combination or agreement of the defendants, or of any two of them, with

reference to the grievances alleged, or any of them, as would support the finding of a conspiracy. Excepting the proceeding for the collection of the moneys due on the two promissory notes originally held by plaintiff, all the wrongful acts charged against "the said defendants, or some of them," so far as they are traced to any of them are traced to the defendant John L. Pfau Jr., and to him alone. It appears from the testimony of plaintiff himself that very unfriendly feelings existed between him and that defendant, and it may be that the latter pursued him with a revengeful spirit and by unjustifiable means. But he had no personal knowledge of any fact, nor did he state a circumstance, that amounted to evidence implicating the others as conspirators with him in respect to what he did. Their attendance as spectators or as witnesses on one or two occasions when plaintiff's preliminary examination or trial was expected, without further explanation, would be no sufficient proof that they procured or conspired to procure his prosecution. That they were proper if not necessary witnesses, as the alleged owners of the property involved, and ought to have taken an interest in the prosecution of the charge after it was made, is clear enough. But the positive evidence is that the charges were made by others. There is none that these two defendants or either of them advised them or knew they were to be made, or afterward approved them, and Schmidt, the only defendant who testified, explicitly denied that he had anything to do with procuring any of these prosecutions or with any other of the alleged grievances, excepting the suits brought to collect the two notes referred to. That these notes were delivered by plaintiff to his copartners as collateral to his note for $4,000, with the right to collect them, is shown by the clear and positive testimony of Schmidt and his two sons, and is denied by the plaintiff alone, who is not corroborated by a circumstance, but is discredited not only by these contradictions but by his own deposition in another case, in relation to the money now claimed to have been given to Pfau Jr., to buy up for plaintiff or satisfy the Eccles judgment, and by his testimony herein as to his presence at the sale of his interest in the personal

Breitenberger v. Schmidt.

property of the firm on execution. The conclusion against him upon this evidence is strengthened by the natural probability that his copartners would, under the admitted circumstances, require such collateral security, and seems to be riveted by the fact that they succeeded in making the collections, by judgment or by compromise or settlement of suit, whether with his assent or against his opposition.

Much might also be said touching the lawfulness of these criminal prosecutions, upon the proof as to malice and probable cause, as affecting these two defendants, but it is deemed unnecessary. The point here made is upon the failure of proof of conspiracy.

We do not wish to be understood, however, as holding that conspiracy is the gist of this action, or its proof essential. In Parker v. Huntington and Farley, 2 Gray, 124, it is held, upon authorities there cited, that in a case like this " the gist of the action is not the conspiracy, but the damage done to the plaintiff by the acts of the defendants," which is " equally great whether it be the result of a conspiracy or of the act of a single individual; " that " the charge of conspiracy is mere surplusage, intended and used as matter of aggravation; " that it is simply an action on the case, against two or more defendants charged jointly; and hence that the plaintiff can maintain his case by proof against one of the defendants only. That case, the court held, was but an action on the case for malicious prosecution, which was the act charged.

If, then, the case here was an action on the case for the several acts charged in this remarkable declaration, the statute of limitations applicable to those acts respectively, was an appropriate plea. And it is clear that every one of them that could ever have been a legal cause of action was barred by the limitation of either two or five years. Both of these were pleaded. And though the plea of the shorter period was held bad on demurrer, it was so held by another judge than the one who presided on the trial. What were his views we have no means of knowing; but if the law is that the plea of the two years limitation was applicable, the

defendants, notwithstanding a verdict against them now, would ultimately get the benefit of it, and there was not, nor could there be, any evidence to maintain the issue on the part of the plaintiff upon that plea.

In either view of the case, then, there was no evidence sufficient to support a verdict for him, and therefore, according to the practice now well settled, the instruction to find for the defendants was right. Simmons v. Chicago & Tomah R. R. Co., 110 Ill. 340; The People ex rel. v. Madison County, 125 Ill. 334.

*Judgment affirmed.*