Leslie George **WAKAT**, Plaintiff-Appellee,

v.

Peter F. **HARLIB**, Irwin Haviland, Harold T. Thompsen, Thomas J. Murphy and Thomas V. Lyons, Defendants-Appellants.

**No. 12151.**

United States Court of Appeals Seventh Circuit.

March 4, 1958.

John C. Melaniphy, Corp. Counsel, Harry H. Pollack, Asst. Corp. Counsel, Chicago, Ill., (Sydney R. Drebin, Asst. Corp. Counsel, Chicago, Ill., of counsel) for appellant.

Peter B. Atwood, Eugene T. Devitt, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and SCHNACKENBERG and HASTINGS, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

A jury found defendants guilty as charged in count I of plaintiff's complaint and assessed his damages at $10,000, and found them guilty as charged in count II of said complaint and assessed plaintiff's damages at $5,000. Judgment was entered on the verdicts and this appeal followed.

Both counts are based upon alleged violations of the federal civil rights act, 42 U.S.C.A. § 1981 et seq. Particularly count I relies upon 42 U.S.C.A. § 1985, which, in part, reads as follows:

"(2) * * * if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws; * *

(3) * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

Count II relies on 42 U.S.C.A. § 1983, which reads as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The district court denied defendants' motions for a directed verdict, for judgment notwithstanding the verdict and for a new trial.

The following is a statement of certain material facts which appear from the evidence (some of which is contradicted by defendants' evidence, which conflict was resolved by the jury's verdicts).

On September 15, 1946, when a burglary occurred at Lakeview Tool and Die Company, the defendant police officers of the City of Chicago, were assigned to Town Hall police station, where Lyons was captain and Murphy was a lieutenant. Harlib was put in charge of investigating the burglary. He went to the scene and found that, in addition to the burglary, there had been a fire. Previously there had been a similar burglary and fire at Atlas Tool and Die Company. At both of these places plaintiff had been employed. He was employed at Chicago Coil Company on September 21, 1946, when he was arrested at about 6 p. m. by Harlib and other policemen because he had a criminal record and had worked at both of the burglarized places.

When arrested plaintiff was placed in a cell and, on the next day, Sunday, he was questioned by Harlib, Haviland, and policeman Suckow, now deceased, about the Lakeview burglary, but denied knowledge of the same. On Monday he was further questioned by Harlib, Suckow, and policeman Schoeler, and given a lie detector test. Harlib, Suckow, and Schoeler went to Chicago Coil Company with plaintiff where his tool box and work bench were searched. From there they went back to Town Hall. When an attorney representing plaintiff called at the police station and stated that he represented plaintiff and wished to see him, defendant Murphy told him to "get out, that he could not see him now." Thereafter plaintiff was questioned by an assistant state's attorney and then taken to court where he was released on a writ of habeas corpus. On the same day, Thompsen, Haviland and another policeman rearrested him and took him to Town Hall. From there he was taken to Chicago Coil Company where he was questioned about some tools and struck by Harlib. He was then taken back to Town Hall and questioned in Murphy's office by Harlib, Murphy, Suckow and others and Murphy struck him and ordered that he be taken upstairs. He was taken upstairs to a gymnasium by Harlib, Haviland, Thompsen and others, and Harlib beat him with a club, Thompsen and Haviland with blackjacks, and Suckow with a sandbag to force him to confess to the burglary at Lakeview. When he collapsed, he was revived with whiskey and, when in a dazed condition, he was taken downstairs and signed papers which were typed by Haviland under the direction of Murphy who asked plaintiff questions. He did not know what the papers contained and signed them because he feared for his life. He was again taken upstairs and beaten and knew nothing thereafter until

he awoke in a cell the next morning, at which time Suckow showed him the papers he had signed, among which was a purported confession. He was bruised in many places, including a broken hand and a swollen left leg. He received some whiskey for his pain but no medical attention. He was placed upon a blanket and taken to the crime laboratory on September 25th; and while on the 13th floor there, Harlib told him that if he did not repeat his confession Harlib would throw him out of the window. He was questioned by assistant state's attorney Napoli in the presence of Harlib, Haviland, Suckow and fire attorney Downes, but was not asked if he had been beaten. Later plaintiff was taken to Lyons' office in Town Hall where he signed a confession and Harlib, Suckow, Haviland and Downes signed as witnesses. He was then put in a cell until the next day when Suckow took him to a bathtub in Lyons' office, gave him an epsom salt bath, rubbed him with alcohol and helped him to shave. He changed into clean clothes brought by his wife. He was put into a cell until Friday September 27th when he was taken to Felony Court where he was bound over to the grand jury and taken to the county jail where he was examined by Dr. Lipsey, jail physician. Dr. Lipsey placed him in the jail hospital because of his injuries. X-rays revealed a broken right hand which was put in a cast and he was treated for an injured right knee and leg and body bruises. Plaintiff remained in the hospital 11 days but received medical treatment until May 9, 1947, when he was taken to the penitentiary to serve a sentence of 10 to 20 years, following an indictment and conviction of burglary in the Criminal Court of Cook County, Illinois. At his trial the confession obtained from him was admitted in evidence. While in the police station his personal property and tools were taken from his home.

On a post-conviction hearing, under § 826–832, ch. 38, Ill.Rev.Stat.1949, the Criminal Court of Cook County set aside the judgment convicting plaintiff and granted him a new trial. This order was affirmed by the Illinois Supreme Court, People v. Wakat, 415 Ill. 610, 114 N.E.2d 706, where that court in its opinion reviewed the evidence as to the alleged mistreatment of plaintiff.

On June 6, 1955, upon motion of the prosecution, the case against plaintiff was nolle-prossed and the personal property and tools of plaintiff theretofore taken from him were returned to him.

The contested issues narrow our consideration of this case. Defendants contend: (1) the plaintiff's cause of action for violation of his civil rights is barred by the Illinois statute of limitations, and (2) count I does not state a cause of action for conspiracy to deprive plaintiff of the equal protection of the laws in violation of 42 U.S.C.A. § 1985, nor does plaintiff's proof show a cause of action under said section, therefore, the verdict of the jury assessing damages under count I is erroneous and the trial court should have so held.

1. Defendants argue that "the plaintiff's cause of action * *. * is barred by the Illinois Statute of Limitations."

The record shows that, by an amendment to their answer, defendants set forth that plaintiff's causes of action are barred by the Illinois statute of limitations "requiring such actions stated in the complaint of plaintiff to be filed *within two years* after the accrual to the plaintiff of such causes of action." (Emphasis supplied.) At the close of plaintiff's case, defendants moved for dismissal of the cause upon that ground.

In their motion for judgment notwithstanding the verdict defendants urged that the claims set forth in count II were barred by the Illinois two years' statute of limitations.[1]

---

1. In the motion for judgment notwithstanding the verdict no mention was made of count I being barred by any limitations act. However what we say herein in regard to count II is also applicable to count I.

In this court defendants rely upon § 14 of the Illinois limitations act (§ 15, ch. 83, Ill.Rev.Stat.1955), reading:

"§ 14. Actions for damages for an injury to the person, or for false imprisonment, or malicious prosecution, or for a statutory penalty, or for abduction, or for seduction, or for criminal conversation, shall be commenced within two years next after the cause of action accrued."

Plaintiff urges that the two-year limitation does not apply to his action. He says § 15 of said act is applicable. It provides:

"§ 15. Actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within five years next after the cause of action accrued."

We are therefore required to determine whether § 14, the two-year limitation, applies to this case. If we find that it is not applicable thereto, plaintiff's causes of action were not barred. That is true even if another provision of the limitation act was applicable thereto but was not pleaded by defendants.

Count I relies expressly upon 42 U.S.C.A. § 1985 which creates a statutory right of action growing out of a conspiracy to impede, hinder, obstruct, or defeat the due course of justice in any state, with the intent therein set forth. This cause of action was created by statute. It is not one of the actions enumerated in § 14. However the Illinois limitations act, § 15, does cover all civil actions not otherwise provided for by that act and therefore the failure to include an action under § 1985 aforesaid within § 14 does not mean that Illinois has no limitation act to bar such an action.

In Breitenberger v. Schmidt, 38 Ill. App. 168, at page 177, the court said:

" * * * for conspiracy, as a cause of action, is certainly not included in the section which limits the time for suit to two years, but might be held to be within the clause 'and all civil actions not otherwise provided for,' in the section which fixes the limitation at five years."

To us this reasoning is persuasive. Turner v. Alton B. & T. Co., 8 Cir., 181 F.2d 899, 903.

A statutory right of action is a "civil action not otherwise provided for" within the meaning of § 15 of the limitation act and is governed by the five-year statute. Parmelee v. Price, 208 Ill. 544, 559, 70 N.E. 725; Blakeslee's Storage Warehouses v. City of Chicago, 369 Ill. 480, 485, 17 N.E.2d 1, 120 A.L.R. 715; Lyons v. County of Morgan, 313 Ill.App. 296, 298, 40 N.E.2d 103; People ex rel. Powles v. County of Alexander, 310 Ill.App. 602, 604, 35 N.E.2d 92; Mueller v. Bittle, 321 Ill.App. 363, 53 N.E.2d 56.

We conclude that, while the action set up in count I is covered by § 15, it is not governed by the two-year provision in § 14 which is exclusively relied upon by defendants.

There is nothing in Foster & Kleiser Co. v. Special Site Sign Co., 9 Cir., 85 F.2d 742, 751, which is inconsistent with our conclusion. In that case the court pointed out, at 751, that it was assumed in the trial court that the statute of limitation was properly pleaded and that § 338, Subd. 1, of the California Code of Civil Procedure was the applicable statute. The court said:

" * * * In any event, therefore, appellee cannot here claim waiver, having treated appellant's plea of the statute as sufficient upon the trial. * * * "

We have examined the record of the trial proceedings in the case before us and we find nothing upon which to base a similar assumption.

As to count II, which is also a statutory cause of action, being created by § 1983, we likewise hold that the two-

year limitation of § 14 relied upon by defendants is inapplicable.

2. Briefly stated, the deprivation by defendants of plaintiff's federal civil rights consisted principally of the following acts: Upon the ground that he had a criminal record he was arrested without a warrant and detained for 6 days without being charged with a crime; thus he was barred from the right to give bail. He was denied the privilege of seeing his attorney. His property and tools were taken from him without legal process. He was coerced by the application of brutal force to sign a confession which was later used in court to convict him, thus compelling him to give evidence against himself in a criminal case.

Defendants contend that count I does not state a cause of action, under 42 U.S.C.A. § 1985, for conspiracy to deprive plaintiff of the equal protection of the laws and that plaintiff's proof does not show a cause of action under said section.

Defendants cite cases holding that actions for assault, false arrest, false imprisonment and similar torts are not cognizable in the federal courts, which citations are not pertinent in this case.

Speaking of the "inhibition against denial of equal protection of the laws", defendants state:

> "* * * The clause prohibits 'discriminatory and partial legislation * * * in favor of particular persons as against others in like condition.' But it also has reference to the way the law is administered. 'Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.' (Constitution Of The United States Of America, 1952, Prepared by the Legislative Reference Service, Library of Congress, p. 1141.)"

We have no disagreement with this statement.

There is a suggestion in defendants' brief that the reference to equal protection of the law in § 1985 is limited by court decisions to the prevention of *class* legislation or action, as distinguished from the deprivation of an *individual's* protection under the law. They cite Mitchell v. Greenough, 9 Cir., 100 F.2d 184; Eaton v. Bibb, 7 Cir., 217 F.2d 446; and Jennings v. Nester, 7 Cir., 217 F.2d 153. Language used in those cases does give some support to the idea suggested by defendants. For that reason we shall demonstrate that, even under that conception of the law, a class discrimination is shown by the record before us. We shall however also show that the record reveals discrimination against plaintiff as an individual and that such discrimination is a violation of his federal civil rights under § 1985.

We now consider this case on the assumption that a recovery under § 1985 requires that plaintiff show that he was a member of a class against which the acts of defendants were discriminatory.

■ Discrimination based upon a classification created by the police is as much within the condemnation of the civil rights acts as discrimination based on a classification derived from color, race or religion. As said in Griffin v. Illinois, 351 U.S. 12, 17, 76 S.Ct. 585, 589, 100 L.Ed. 891,

> "* * * In this tradition, our own constitutional guaranties of due process and *equal protection* both call for procedures in criminal trials which allow no invidious discriminations *between persons and different groups of persons.* * * *" (Italics supplied.)

While count I expressly relied upon § 1985(3), no demurrer or other action to test the legal sufficiency thereof was made in the district court.

Defendant Harlib, who was in charge of investigating a burglary, testified that the officers checked all of the employees of the Lakeview Tool and Die Company and of the Atlas Tool and Die Company with the police bureau of identification and found plaintiff to be the only man at both places having a record of previous criminal conviction and that that gave grounds to investigate him and to arrest him.

Harlib identified plaintiff's exhibit 1, as the rules and regulations of the department of police of the city of Chicago. Rule 465, Arrest Without Warrant, in part reads:

> "In case of an arrest with or without a warrant, the offender shall be brought before a judge of the municipal court as speedily as possible, as an officer becomes a trespasser if he delays longer than the necessity of the case compels. This, however, does not apply when the offender is a well-known criminal who is held pending investigation; but in such cases, however, complaint shall be filed within twenty-four hours, if possible, and continuance applied for."

Obviously where there is a record of a man's previous criminal conviction, to the police he is a well-known criminal. When asked whether he brought plaintiff before a judge to set bail on the following Monday morning, Harlib replied: "He was still being investigated".

■ It is clear that the treatment which Harlib and the other defendants gave to plaintiff was different from the treatment which he would have received if he had not had a record of conviction for crime. We are unaware of any recognized distinction between persons having such a record and persons not having such a record, within the orbit of civil rights under § 1985. However without any authority, plaintiff was so classified by defendants and, in consequence thereof, was deprived of the protection of the federal constitution and laws available to persons in the classification of those not convicted of crime.

■ On the other hand, if § 1985 extends to a conspiracy to deny to plaintiff equal protection of the laws, it is not necessary, to justify the result in the district court, to point to any class of which he was a member. In Truax v. Corrigan, 257 U.S. 312, at page 332, 42 S.Ct. 124, 129, 66 L.Ed. 254, speaking on the due process clause, the court said:

> "* * * It, of course, tends to secure equality of law in the sense that it makes a required minimum of protection for every one's right of life, liberty, and property, which the Congress or the Legislature may not withhold. * * *

> "The guaranty was aimed at undue favor and individual or class privilege, on the one hand, and at hostile discrimination or the oppression of inequality, on the other. It sought an equality of treatment of all persons, even though all enjoyed the protection of due process. * * * *"

It follows from what has been said, that, even if plaintiff were not a member of a class against which defendants discriminated in a deprivation of federal civil rights, plaintiff, as a person, still has an action under § 1985.

■ In conclusion, we hold that there is evidence in the record to support the verdict of the jury finding defendants guilty of the charge in count I based upon 42 U.S.C.A. § 1985.

For the aforesaid reasons, the judgment of the district court is affirmed.

Affirmed.