Mrs. Mary Ellen PRITCHARD, wife of Charles C. Pritchard, Appellant,

v.

Eugene G. SMITH, Chief of Police, City of Little Rock, Arkansas, Appellee.

No. 16637.

United States Court of Appeals
Eighth Circuit.

April 26, 1961.

Sidney W. Provensal, Jr., New Orleans, La., made argument. Amis Guthridge, Little Rock, Ark., was with Sidney W. Provensal, Jr., New Orleans, La., on the brief, for appellant.

Joseph C. Kemp, Little Rock, Ark., made argument and filed brief on behalf of appellee.

Before SANBORN, VAN OOSTERHOUT and MATTHES, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

The sole issue presented by this appeal is whether plaintiff's action for damages to her person, brought pursuant to 42 U.S.C.A. § 1983 for alleged violation of civil rights, survived upon the death of the defendant. The trial court held the action did not survive and entered judgment of dismissal. This timely appeal followed.

Plaintiff in the complaint filed September 25, 1959, alleged that the defendant Smith, Chief of Police of Little Rock, Arkansas, acting under color of state law, violated her constitutional and civil rights. Plaintiff alleged that by direction of the defendant she was, without warning, or provocation, forcibly seized

and taken to jail, beaten, manhandled, and injured. Plaintiff further asserts:

"[S]he was denied her constitutional right to equal protection under the laws, was denied her constitutional right to see and talk with her attorney; she was illegally detained for an unreasonable length of time without charge; was subjected to constant and protracted questioning in relays; was denied the opportunity to give and post bail immediately upon her request, and was further subjected to the beatings and treatment as above described; all of which actions were the actions caused by the defendant herein."

Plaintiff asked damages for $50,000. The action is brought under 42 U.S.C.A. § 1983 to recover damages for personal injury sustained by defendant's alleged tortious acts. Jurisdiction of civil rights actions is conferred by 28 U.S.C.A. § 1343(4).

Defendant filed answer denying any wrongful conduct. Thereafter, suggestion of death of defendant and motion to dismiss were filed, from which it appears defendant died on March 18, 1960.

Plaintiff filed a motion for substitution wherein she shows that an administrator has been duly appointed for the estate of Eugene G. Smith, deceased, and asks the court to revive the action against such administrator, and to substitute the administrator as defendant.

After hearing, the court sustained the motion to dismiss the action upon the ground that the action did not survive upon defendant's death. The court cites the companion case of Lauderdale v. Smith, 186 F.Supp. 958, decided by it on the same day, in support of its judgment.

The Lauderdale case, like the present case, involved a civil rights action against the same defendant for vindication of rights personal to the plaintiff in such action. The basis of the court's determination that action for alleged violation of civil rights does not survive the defendant is thus stated by the court in the Lauderdale case:

"The right of action plaintiff seeks to enforce was created by Congress and is governed by federal substantive law. See Nelson v. Knox, 6 Cir., 1956, 230 F.2d 483. In the absence of Congressional provision for the survival of such cause of action we must resort to the common law, as developed in the federal courts. As so developed, the rule is said to be that causes of action akin to contract actions or to tort actions affecting property rights survive, while those akin to tort actions in the nature of personal wrongs abate, the reason for redressing purely personal wrongs ceasing to exist when the person inflicting the injury cannot be punished. Barnes Coal Corp. v. Retail Coal Merchants Ass'n, 4 Cir., 1942, 128 F.2d 645.

"This federal rule, though contrary to the Arkansas legislation upon the subject—see Ark.Stats.1947, §§ 27–901, 27–902 (wrongs to person, other than slander and libel, survive death of wrongdoer)—controls this case. The gravamen of plaintiff's allegations being for the vindication of wrongs to his person, I hold that his cause of action abated upon the defendant's death." 186 F.Supp. 959.

■ We fully agree with the trial court's conclusion that this is an action arising under federal statute and that consequently federal law governs. In such a situation, the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, does not apply.

Volume 1, Moore's Federal Practice, ¶¶ 0.322 and 0.323, discusses quite fully the problem of the law to be applied in adjudication of rights created by numerous federal statutes. By way of summary, Professor Moore in ¶ 0.328, page 3901, states:

"Where federal matters are involved (1) specific language of valid federal statutes will control when applicable; (2) where federal statutes do not clearly articulate the law to be applied, federal courts must

fill the interstices; (3) federal courts can do this by reference to federal or state law; (4) the choice here depends on a number of different factors."

In ¶ 0.323 [22], pp. 3757–59, he states:

"When the specific federal statutes do not cover the matter under consideration explicitly there is a possibility that a state statute may be applied either because the federal statute by implication so requires or because the federal statute is keyed to some state-created right or status. On the other hand, a federal court may find that the interstices are to be filled by reference to federal decisonal law. The line between situations where reference must be made to state law and those where federal decisional law will control is not clear.

\* \* \* \* \* \*

"In applying a particular federal statute the courts are primarily concerned in divining and effectuating its policies. And to the extent that these policies refer to, incorporate, or depend on state law then the court will to that extent apply state law— not because of Erie, but because the statutory policy so requires."

█ Section 1983 does not deal expressly with the question of survivorship. In such a situation, "it is for the federal courts to fashion the governing rule \* \* \* according to their own standards." Clearfield Trust Co. v. United States, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838.

In cases arising under federal law, federal courts have in some instances determined the rights of the parties upon the basis of state law. United States v. Standard Oil Co. of California, 332 U.S. 301, 308, 67 S.Ct. 1604, 91 L.Ed. 2067, Tyson v. State of Iowa, 8 Cir., 283 F.2d 802, 805.

Just v. Chambers, 312 U.S. 383, 668, 61 S.Ct. 687, 85 L.Ed. 903, involved a federal admiralty action for personal injuries caused by carbon monoxide poisoning to a passenger of a ship while cruising in navigable Florida waters. The ship owner died. The court of appeals held that under the governing principles of admiralty law the maritime tort action against the owner did not survive. The Supreme Court reversed. The court recognized that the action did not survive under maritime law but stated it saw no reason why the Florida rule providing for survival of causes of action against a deceased tortfeasor should not be applied. The court states:

"For, while the injury occurred on navigable waters, these were within the limits of Florida whose legislation provided that the cause of action should survive. And it is not a principle of our maritime law that a court of admiralty must invariably refuse to recognize and enforce a liability which the State has established in dealing with a maritime subject. On the contrary, there are numerous instances in which the general maritime law has been modified or supplemented by state action, as e. g. in creating liens for repairs or supplies furnished to a vessel in her home port. The Lottawanna, 21 Wall. 558, 580 [22 L.Ed. 654]; The J. E. Rumbell, 148 U.S. 1, 12 [13 S. Ct. 498, [500] 37 L.Ed. 345]. With respect to maritime torts we have held that the State may modify or supplement the maritime law by creating liability which a court of admiralty will recognize and enforce when the state action is not hostile to the characteristic features of the maritime law or inconsistent with federal legislation." 312 U.S. 387– 388, 61 S.Ct. 691.

In Van Beeck v. Sabine Towing Co., 300 U.S. 342, 57 S.Ct. 452, 81 L.Ed. 685, the issue of whether the Merchant Marine Act, 46 U.S.C.A. § 688, gives a cause of action to a personal representative of a seaman whose death was caused by a maritime tort, is presented. The court held the action survived, calling attention to the statutory provision that seamen are granted the benefits of statutes con-

ferring rights on death of railway employees. The court traces the history and background of the law denying survival and the inroads made upon such rule by statutes and decisions, and then states:

"Death statutes have their roots in dissatisfaction with the archaisms of the law which have been traced to their origin in the course of this opinion. It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied. There are times when uncertain words are to be wrought into consistency and unity with a legislative policy which is itself a source of law, a new generative impulse transmitted to the legal system. 'The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed.' Its intimation is clear enough in the statutes now before us that their effects shall not be stifled, without the warrant of clear necessity, by the perpetuation of a policy which now has had its day." 300 U.S. 350–351, 57 S.Ct. 456.

In Cox v. Roth, 348 U.S. 207, 75 S.Ct. 242, 99 L.Ed. 260, the court held that an action under the Jones Act survived the death of the tortfeasor. Apparently neither the Jones Act nor the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., benefits of which were incorporated in the Jones Act, made any specific provision for survival of actions upon the death of a tortfeasor. The court calls attention to the fact that the Jones Act as welfare legislation is entitled to liberal construction, and states:

"The policy as well as the letter of the law is a guide to decision. Resort to the policy of a law may be had to ameliorate its seeming harshness or to qualify its apparent absolutes * * *. The extreme harshness of the old common-law rule abating actions on the death of the tortfeasor flies in the face of the expressed congressional purpose to provide for 'the welfare of seamen.' * * * Nevertheless, in considering the harshness of the rule sought to be imposed under the Jones Act, we do note that advancing civilization and social progress have brought 43 of our States to include in their general law the principle of the survival of causes of action against deceased tortfeasors, and that such recovery, rather than being exceptional, has now become the rule in almost every common-law jurisdiction. See the discussion by Roscoe Pound on death statutes as part of the general law, 13 NACCA L.J. 188–189 (May 1954)." 348 U.S. 209–210, 75 S.Ct. 244.

Nordquist v. United States Trust Co., 2 Cir., 188 F.2d 776, also involves an action under the Jones Act for damages for death of a seaman against the executor of the deceased owner of the ship. The court found that no express provision for survival appeared in the applicable statutes, but held the action survived, stating:

"But this appears to be only the third litigated case where survivorship against the estate of the tortfeasor has been asserted and recovery was allowed under a state statute in one of the preceding two, Just v. Chambers, supra. Where the frustration of the clear purposes of the Act is so patently the result of a failure to foresee the consequences of a seldom recurring situation, the courts in this strictly limited sphere have never been inclined to let the plaintiff go remediless." 188 F.2d 778.

Other cases discussing the survival of federally created causes of action in a situation where the creating statute made no express provision for survival, include: Dellaripa v. New York, New Haven & Hartford R. Co., 2 Cir., 257 F.2d 733, 735 (F.E.L.A. cause of action survived death of sole beneficiary); Union Carbide Corp. v. Goett, 4 Cir., 256 F.2d 449, 453 (maritime law, state sur-

vival statute applied); Loc-Wood Boat & Motors v. Rockwell, 8 Cir., 245 F.2d 306, 311 (admiralty case, court applied Missouri wrongful death statute); Rogers v. Douglas Tobacco Board of Trade, 5 Cir., 244 F.2d 471, 483 (Sherman Act cause of action, court held it survived by reason of the policy of the federal statute and in the alternative, under a Georgia survival statute.)

42 U.S.C.A. § 1988, a part of the chapter on civil rights which also contains § 1983, provides:

> "The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but *in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held,* so far as the same is not inconsistent with the Constitution and the laws of the United States, *shall be extended to and govern the said courts in the trial and disposition of the cause,* and, if it is of a criminal nature, in the infliction of punishment on the party found guilty." (Emphasis added.)

This statute, so far as it pertains to civil actions, has had little judicial attention. Dyer v. Kazuhisa Abe, D.C.Hawaii, 138 F.Supp. 220, 229, reversed on other grounds, 9 Cir., 256 F.2d 728, states summarily without explanation that the statute relates to procedure, not jurisdiction. Davis v. Johnson, D.C.N.D.Ill., 138 F. Supp. 572, 574, discusses § 1988 and at least in partial support of its conclusion that the action survives, states:

> "Section 1988 of Title 42 stated the policy that 'suitable remedies' shall be extended for the 'protection of all persons in the United States in their civil rights, and for their vindication'."

■ We cannot accept the view that § 1988 is procedural only. The substitution procedure is specifically prescribed in Rule 25 of the Federal Rules of Civil Procedure, 28 U.S.C.A. Subsection (a) (1) thereof makes the substitution procedure available *only* in situations where the cause of action is *not* extinguished by death.

It appears to us that Congress by the language we have italicized in § 1988 intended to enlarge the civil right remedy by authorizing resort to state law where the state law is not inconsistent with the laws of the United States.

■ Since no federal statute specifically deals with the substantive issue of survival, in the situation here presented no inconsistency results from the application of the state survival law. It is readily apparent from the Just, Van Beeck and Cox cases heretofore discussed that the Supreme Court did not consider the granting of the right of survival as being inconsistent with any federal law or policy. Each of said cases shows a strong trend to construe statutes liberally to allow the survival of tort actions.

Moreover, if we have given § 1988 a broader interpretation then it is entitled to, we believe that the cases heretofore cited would justify the conclusion that this is the type of a situation where a court would be entitled to look to state law to determmine the survival issue. There appears to be no well defined or established federal common law as to the survival of tort actions for the vindication of personal rights. In Davis v. Johnson, supra, the court states, "The question of survival of actions under Section 1983, upon which this suit is based, has apparently never been adjudicated."

In Moore-McCormack Lines v. McMahon, 2 Cir., 235 F.2d 142, 143, Chief Judge Clark observes:

"With respect to appellees' first point that these are claims in tort which in admiralty do not survive the respondents' death, it should be noted that even as to torts there may be a question as to whether the more modern principle of survivability will not come to be recognized, notwithstanding, and perhaps as indicated in, Nordquist v. United States Trust Co. of New York, 2 Cir., 188 F.2d 776, 777."

In Dellaripa v. New York, New Haven & Hartford R. Co., supra, an action under the Federal Employers' Liability Act was held to survive, the court stating:

"To suggest, therefore, as does the defendant, that §§ 51 and 59 are to be treated differently because the former creates a 'property' right while the latter creates a 'personal' right is merely 'perpetuation of a policy which now has had its day.' " 257 F.2d 735.

The defendant and the trial court in support of the contention that the action does not survive, rely upon Barnes Coal Corp. v. Retail Coal Merchants Ass'n, 4 Cir., 128 F.2d 645, and Nelson v. Knox, 6 Cir., 230 F.2d 483. In each of these cases the right of survival was upheld. Barnes was an action for violation of the Sherman Act. Nelson was a civil rights case wherein plaintiff claimed defendant, by enacting and enforcing illegal ordinances under color of state law, damaged plaintiff's automobile business. The court held plaintiff's business and property rights were damaged by the alleged wrongful acts and that the action survived.

The Barnes case does discuss extensively the common law rule as to survival of actions and makes the statement that where the injury affects property rights the action survives, but where the injury affects the person alone, the action abates. Nelson quotes extensively from

Barnes. We emphasize that the court was not confronted with the issue of survival of tort actions involving only injury to the person in either of the cases, and that the court in each instance held that the action was for damage to property and that the action survived. The statements relating to survival of action for injury to person were no more than dicta.

To summarize, § 1983 does not specifically treat with the survival issue. We find no well-established federal common law on the survivorship issue. The federal courts, at least in the more recent cases, lean strongly toward a construction favoring survival.

Section 1988 indicates that in situations such as this, resort should be had to state law to provide an appropriate remedy. In the absence of a specific statute, such as § 1988, federal courts have determined the rights of the parties, including the issue of survival, on the basis of state law. We believe that the court should look to the Arkansas law to determine the survival issue here present. Hence, we find it unnecessary to speculate on the question of what the present federal common law upon the survival issue might be.

The trial court recognized that Arkansas by statute provides for the survival of actions for wrongs to the person, other than libel and slander, and that if Arkansas law controls the action would survive. Ark.Statutes 1947, § 27–901.[1] See Brown v. Cole, 198 Ark. 417, 129 S.W. 2d 245, 122 A.L.R. 1348.

We hold that this action survived the death of the defendant Smith and that the court erred in determining that the action abated and in denying the motion for the substitution of Smith's administrator as defendant.

As we noted at the outset, we are here passing only upon the issue of whether this civil rights action for vindication of personal rights survives the death of the

[1] "27–901. Wrongs to person or property.—For wrongs done to the person or property of another, an action may be maintained against the wrong-doers, and such action may be brought by the person injured, or, after his death, by his executor or administrator against such wrong-doer, or, after his death, against his executor or administrator, in the same manner and with like effect in all respects as actions founded on contracts."

alleged wrong-doer. The question of whether good cause of action under the civil rights act has been stated and the merits of the controversy are not before us.

The judgment appealed from is reversed and this case is remanded with directions to reinstate the action and to substitute the administrator as defendant, and for further proceedings not inconsistent with the views expressed in this opinion.