Charles **BAKER** et al., Plaintiffs-
Appellees,

v.

**F & F INVESTMENT** et al., Defendants-
Appellants.

Sidney **CLARK** et al., Plaintiffs-
Appellees,

v.

**UNIVERSAL BUILDERS, INC.,** et al.,
Defendants-Appellants.

Nos. 17815, 17816, 17750, 17751.

United States Court of Appeals
Seventh Circuit.

Jan. 6, 1970.

Rehearing Denied and Rehearing En
Banc Denied March 5, 1970.

J. Stirling Mortimer, Paul R. Hoffman, Chicago, Ill., Burton Y. Weitzenfeld, John F. McClure, Louis A. Lehr, Jr., Harvey J. Barnett, Stanley M. Lipnick, of Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., for defendants-appellants in Clark.

Robert S. Cushman, Jeffrey G. Liss, of Price, Cushman, Keck & Mahin, George S. Feiwell, Edward L. S. Arkema, Harvey M. Silets, Chicago, Ill., for defendants-appellants in Baker.

Jerris Leonard, Asst. Atty. Gen., David L. Norman, Deputy Asst. Atty. Gen., J. Harold Flannery, John A. Bleveans, Attys. Dept. of Justice, Washington, D. C., amicus curiae.

William R. Ming, Jr., Aldus S. Mitchell, Thomas J. Boodell, Jr., Albert E. Jenner, Jr., Thomas P. Sullivan, John G. Stifler, David C. Roston, Chicago, Ill., for plaintiffs-appellees.

Before DUFFY, Senior Circuit Judge, and KILEY and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

These consolidated appeals concern statute of limitations rulings of the dis-

trict court with respect to two related class actions brought by Negro purchasers of new and used residential real estate in Chicago. The purchases were on installment contracts allegedly containing terms less favorable to Negroes than would have been available to whites. Count I of each complaint was based principally on Section 1982 of the Civil Rights Act of 1866 (42 U.S.C. § 1982), as construed in Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189. Count II of the *Baker* complaint alleged violations of the federal antitrust laws, and Count III of the *Baker* complaint alleged violations of the Illinois antitrust laws.[1]

The district court held that the Illinois 5-year statute of limitations governing civil actions not otherwise provided for (Ill.Rev.Stat. (1967) ch. 83, § 16) is applicable to Count I of both complaints and that the 4-year statutes of limitations contained in the federal and Illinois antitrust laws (15 U.S.C. § 15b and Ill.Rev.Stat. (1967) ch. 38, § 60–7) are respectively applicable to *Baker* Counts II and III. However, the court held that the statutes of limitations run from the date the real estate installment contracts terminate rather than from the date they were executed, as defendants had contended. Accordingly, the court concluded that the plaintiff classes must be redefined to eliminate the purchasers whose contracts terminated prior to the periods of limitations.[2] Defendants have brought interlocutory appeals from the district court's decision and plaintiffs were given leave to cross appeal. These interlocutory and cross appeals require us to decide whether the doctrine of laches is applicable. If not, we must determine what statutes of limitations, if any, are applicable to Counts I of each complaint and to *Baker* Counts II and III, and when they began to run.

*The Doctrine of Laches Is Inapplicable.*

■ As to Count I based on the Civil Rights Act, plaintiffs and the United States as *amicus curiae* urge that the claims are governed by laches rather than by the statutes of limitations. They would be correct if the claims were solely equitable. Russell v. Todd, 309 U.S. 280, 60 S.Ct. 527, 84 L. Ed. 754; Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743. However, the complaints seek money damages, both actual and punitive, and cannot be deemed exclusively equitable. Therefore, as we recently held in Morgan v. Koch, 419 F.2d 993 (7th Cir., 1969), the doctrine of laches does not apply to the Count I claims.[3]

*State Statutes of Limitations Apply to Federal Civil Rights Actions.*

Despite long settled rulings to the contrary, plaintiffs assert that no state statute of limitations bars federal civil rights actions. Ever since the 1915 decision of the Supreme Court in O'Sullivan v. Felix, 233 U.S. 318, 34 S. Ct. 596, 58 L.Ed. 980, the courts have uniformly held that state limitations statutes are to be applied to federal civil rights actions other than those based upon Section 1986 of the 1871 Act (42 U.S.C. § 1986). See, *e. g.*, Francis v. Crafts, 203 F.2d 809 (1st Cir. 1953), certiorari denied, 346 U.S. 835, 74 S.Ct. 43, 98 L.Ed. 357; Swan v. Board of Higher Education of City of New York,

---

1. Since the court below held that plaintiff stated a claim for relief under Section 1982, it did not pass upon the motions to dismiss as to violations of Sections 1981, 1983 and 1985(3) of the Civil Rights Act and of the Thirteenth and Fourteenth Amendments to the Constitution of the United States, nor do we. Motions to dismiss were sustained as to other Counts of both complaints. Those Counts are not involved in this appeal.

2. The opinion of the district court is reported at 300 F.Supp. 210.

3. It is unnecessary to consider the Illinois laches cases cited by plaintiffs. The applicability of the doctrine of laches to actions in federal courts based on federally created causes of action is a matter of federal and not state law. We need not decide the extent to which federal courts should follow state decisions where the doctrine is applicable.

319 F.2d 56, 59 (2d Cir. 1963); Hileman v. Knable, 391 F.2d 596, 597 (3d Cir. 1968); Beard v. Stephens, 372 F.2d 685, 688 (5th Cir. 1967); Crawford v. Zeitler, 326 F.2d 119, 121 (6th Cir. 1964); Smith v. Cremins, 308 F.2d 187, 189, 98 A.L.R.2d 1154 (9th Cir. 1962). Our decision in Wakat v. Harlib, 253 F.2d 59 (7th Cir. 1958), is to the same effect and requires our rejection of plaintiffs' argument that no statute of limitations bars Count I of these complaints.

■ Plaintiffs, however, argue that these decisions rest upon a faulty application of the Rules of Decision Act (28 U.S.C. § 1652).[4] They contend that the original purpose of that statute was to reassure opponents of diversity jurisdiction that state law would be applied by federal courts in diversity cases. They argue that any limitation on federally based actions is properly a matter of federal law and that the exception in the Rules of Decision Act covers this case. They urge that civil rights actions demand uniform federal rules in all particulars and that the failure of Congress to enact a statute of limitations applicable to Section 1982 of the Civil Rights Act evidences an intent that no statutory limitation should bar relief. We are unable to accept this position.

Regardless of the intended effect which the Rules of Decision Act was to have upon diversity jurisdiction, it was soon firmly applied to those gaps in federal law for which no uniform, common law was felt by the courts to be necessary. More than 30 years before the enactment of the Civil Rights Act, the Supreme Court held in McCluny v. Silliman, 28 U.S. (3 Pet.) 270, 7 L.Ed. 676,

that under the Rules of Decision Act the federal courts must apply state statutes of limitations to federal causes of action in the absence of a special provision by Congress:

> "Under this statute [the Rules of Decision Act] the acts of limitations of the several states, where no special provision has been made by Congress, form a rule of decision in the courts of the United States, and the same effect is given to them as is given in the state courts." 28 U.S. (3 Pet.) at p. 277, 7 L.Ed. 676.[5]

This rule has never been seriously challenged. Moreover, since Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, overruled the doctrine of 'Swift v. Tyson, 41 U.S. (16 Pet.) 1, 10 L.Ed. 865, adoption of state statutes to fill gaps in federal law has continued as a prime function of the Rules of Decision Act.

Nor does that Act's exception to state rules which conflict with federal law apply to statutes of limitations. Limitations on the period within which a right may be redressed do not conflict with the existence of that right. Cf. the Virginia Coupon Cases, 114 U.S. 269, 303, 5 S.Ct. 903, 29 L.Ed. 185. Rather, absent a direct expression by Congress to the contrary, limitations on actions are deemed so universal that the courts must supply an appropriate period by absorbing an applicable state statute into the interstices of federal law. As the Court stated in Campbell v. City of Haverhill, 155 U.S. 610, 616-617, 15 S.Ct. 217, 219-220, 39 L.Ed. 280:

> "Unless this be the law, we have the anomaly of a distinct class of actions

4. The statute provides:
"The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in courts of the United States, in cases where they apply."

5. Despite plaintiffs' characterization, Metropolitan R. Co. v. District of Columbia, 132 U.S. 1, 13, 10 S.Ct. 19, 33 L.Ed.

231, does not suggest that *McCluny* involved no federal question at all but was only an action under an implied contract. McCluny had asserted that his "rights accrued to him under a law of congress." 28 U.S. (3 Pet.) at p. 276, 7 L.Ed. 676. This is also reaffirmed in the discussion of the *McCluny* case in Campbell v. City of Haverhill, 155 U.S. 610, 619–620, 15 S.Ct. 217, 39 L.Ed. 280.

subject to no limitation whatever; a class of privileged plaintiffs who, in this particular, are outside the pale of the law, and subject to no limitation of time in which they may institute their actions. The result is that users of patented articles, perhaps innocent of any wrong intention, may be fretted by actions brought against them after all their witnesses are dead, and perhaps after all memory of the transaction is lost to them. This cannot have been within the contemplation of the legislative power. As was said by Chief Justice Marshall in Adams v. Woods, 2 Cranch, 336, 342, [2 L.Ed. 297] of a similar statute: 'This would be utterly repugnant to the genius of our laws.'"

In addition to the application of a state statute of limitations to the Civil Rights Act of 1870 in O'Sullivan v. Felix, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980, state statutes of limitations have been held to prescribe limitations standards for such diverse and important federal Acts as the Sherman Antitrust Act (Chattanooga Foundry v. Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241), and the Labor Management Relations Act of 1947 (International Union, United Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192.) Plaintiffs have furnished no convincing distinction between the use of state limitations statutes for those statutes and their application to actions under the various Civil Rights Acts. No evidence from the legislative history or the nature of the Civil Rights Acts points to such a distinction. Federal legislation is often directed to the cure or preven-

tion of a substantial evil. The fact that the Civil Rights Acts grew out of the need to remedy prior abuses of state law and state officials fails to indicate that Congress intended private actions to remain ripe interminably or that the federal courts could not be trusted to select appropriate state limitations statutes.

Plaintiffs point out that Congress enacted a one-year limitation for actions based upon the "passive accessory" provision of Section 6 of the 1871 Civil Rights Act (42 U.S.C. § 1986). They argue that the failure of Congress to enact a specific limitation applicable to any other provision of the Civil Rights Acts of 1866, 1870 or 1871, indicates an intent that no statutory limitation should apply. We disagree. A fairer interpretation of the import of Congress' 1871 action would be the desire to insure that actions against "passive accessories" must be brought in a relatively short time after any injury has been suffered. Congress has never demonstrated any wish for unlimited actions or (apart from Section 1986) uniform standards of limitation in this area of the law.

Similarly, we refuse to read into Section 3 of the 1866 Civil Rights Act, now 42 U.S.C. § 1988, any antipathy to the adoption of appropriate state statutes of limitations in civil rights actions.[6] Plaintiffs contend that Section 1988 limits the use of state common or statutory law in civil rights actions to those local rules which assist or extend the plaintiffs in vindicating their rights. As such, they argue, it bars the adoption of state laws of limitation of actions which cut off otherwise meritorious claims be-

---

6. Section 3 of the 1866 Civil Rights Act provides in pertinent part:
    "The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause. * * *"

cause of a lapse of time. We are reluctant to construe Section 1988 so broadly in the face of the well settled practice of adopting state limitations periods for federal law. Congress would surely have spoken more explicitly had it intended that civil rights actions should endure forever or be subject only to laches, regardless of the nature of the claim presented.

■ No conflict appears between Section 1988 and the application of state limitations acts in civil rights cases. That Section provides for the use of state law as a supplement to the remedial powers of federal district courts. Cf. Sullivan v. Little Hunting Park, 396 U. S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386. It is addressed to those cases in which existing federal practice falls short of accomplishing the purposes of the Civil Rights Acts because the courts otherwise lack the power to bring about the appropriate results. This function does not vary the application of appropriate substantive state laws ordinarily adopted by federal courts to fill gaps in federal substantive law. We find no indication that Congress intended Section 1988 to perpetuate such hiatuses because, in particular instances, plaintiffs' claims might be barred for failure to comply with state law. In truth, Section 1988 was designed to supplement but not supplant the Rules of Decision Act. Cf. In re Stupp, 23 Fed.Case No. 13,563, p. 296 at 299, 12 Blatchf. 501 (Cir.Ct., S.D.N. Y.1875); Schatte v. International Alliance, 70 F.Supp. 1008, 1010 (S.D.Calif.

1947), affirmed, 165 F.2d 216 (9th Cir. 1948), certiorari denied, 334 U.S. 812, 68 S.Ct. 1018, 92 L.Ed. 1743.

Section 1988 is inapplicable where substantive law denies a plaintiff any right to relief. All rules which affect the right of recovery necessarily affect its "remedy." That does not mean, however, that all such rules must necessarily be considered "remedial" within the purview of Section 1988. We reject the position, apparently urged by plaintiffs, that the bar imposed by a statute of limitations is remedial because, like survivorship, it affects the ultimate right to any recovery at all. Cf. Brazier v. Cherry, 293 F.2d 401 (5th Cir. 1961), certiorari denied, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136; Pritchard v. Smith, 289 F.2d 153, 157, 88 A.L.R.2d 1146 (8th Cir. 1961).[7] Since Section 1988 was not employed here to adopt any state remedial rules, it has no relevance to the instant case.[8]

■ Our conclusion finds further support in the long vitality of the Supreme Court's decision in O'Sullivan v. Felix, 233 U.S. 318, 34 S.Ct. 596, 58 L. Ed. 980, which was again recently cited with approval in International Union, United Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 704, 86 S.Ct. 1107, 16 L.Ed.2d 192. Legislative inaction is, to be sure, a poor token of Congressional intent. Nevertheless, in this area of the law, as stated in *Hoosier Cardinal Corp.*,

"* * * when Congress has disagreed with such an interpretation of

---

7. To the extent that these two rules are not properly distinguishable, we believe that Section 1988 was unnecessarily and inaptly relied upon as the justification for the adoption of state survival law in federally based actions. As the opinion in Pritchard v. Smith conclusively indicates, other areas of federal law quite readily adopted state survival rules for application to federal statutes which contained no provision resembling Section 1988 (including the Jones Act, the Merchant Marine Act, the F.E.L.A., and even the Sherman Act). The result of *Brazier* and *Pritchard* has firm basis in federal

law and policy quite apart from any reference to Section 1988. While many of the comments contained in those cases concerning the nature of Section 1988 are well considered, the decisions do not necessarily depend upon that statute.

8. Compare Hughes v. Smith, 264 F.Supp. 767, 769 (D.N.J.1967), where Section 1988 was itself employed as the basis for the application of the state's statute of limitations to bar an action brought under 42 U.S.C. § 1983. The point was conceded on appeal and the decision was affirmed by the Third Circuit, 389 F.2d 42 (1968).

its silence, it has spoken to overturn it by enacting a uniform period of limitations." 383 U.S. at p. 704, 86 S.Ct. at p. 1112.

We therefore hold that the application of state statutes of limitations to federal causes of action under the Civil Rights Acts is consistent with Congress' intent as expressed in the relevant statutes and violates neither the due process nor equal protection clauses. We adhere to our decision in Wakat v. Harlib, 253 F. 2d 59 (7th Cir. 1958), and turn to the law of Illinois to determine the appropriate statute of limitations as to Count I of the instant cases.

9. The statutory sections read:

   16. Oral contracts—Arbitration awards —Damage to property—Possessory actions—Civil actions. § 15. Except as provided in Section 2–725 of the "Uniform Commercial Code", enacted by the Seventy-second General Assembly, actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued.

   12.1 § 1. 40 year limitation on claims to real estate. No action based upon any claim arising or existing more than 40 years before the commencement of such action shall be maintained, either at law or in equity, in any court to recover any real estate in this state or to recover or establish any interest therein or claim thereto, legal or equitable, against the holder of the record title to such real estate when such holder of the record title and his grantors immediate or remote are shown by the record to have held chain of title to said real estate for at least 40 years before the action is commenced, unless such claimant, by himself or by his attorney or agent, or if he be a minor or under legal disability, by his guardian, conservator, trustee, either parent, or any other person acting in his behalf shall within 40 years after the claim upon which such action is based arises, file in the office of the recorder of deeds of the county wherein such real estate is situated, a verified statement definitely describing the real estate involved, the na-

## The Applicable State Statute of Limitations Is Section 15 of the Illinois Limitations Act.

Turning to the various Illinois statutes of limitations, plaintiffs contend that the trial court erred in selecting Section 15 of the Illinois Limitations Act (Ill.Rev.Stat. (1967) ch. 83, § 16). They argue that the applicable provision should be either Section 12.1, dealing with actions regarding real estate, or Section 16, governing actions on written contracts (Ill.Rev.Stat. (1967) ch. 83, §§ 12.1 and 17).[9]

In Wakat v. Harlib, 253 F.2d 59 (7th Cir. 1958), this Court held that Section

ture and extent of the right or interest claimed, and stating the facts upon which the same is based; Provided, however, that the holder of the record title to such real estate shall not be entitled to the protection of this Act if the real estate is in the adverse possession of another.

For purposes of this section an unborn or unascertained person may be a claimant and a verified statement may be filed on his behalf as hereinbefore provided.

For the purposes of this Act, any person who holds title to real estate by will or descent from any person who held the title of record to such real estate at the date of his death or who holds title by decree or order of any court, or by deed issued pursuant thereto, i. e., by trustee's, trustee's in bankruptcy, conservator's, guardian's, executor's, administrator's, receiver's, assignee's, master's in chancery, or sheriff's deed shall be deemed to hold chain of title the same as though holding by direct conveyance.

   17. Writings—New contract. § 16. Except as provided in Section 2–725 of the "Uniform Commercial Code", enacted by the Seventy-second General Assembly, actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing, shall be commenced within 10 years next after the cause of action accrued; but if any payment or new promise to pay shall have been made, in writing, on any bond, note, bill, lease, contract, or other written evidence of indebtedness, within or after the period of 10 years, then an action may be commenced thereon at any time within 10 years after the time of such payment or promise to pay.

15 was the applicable state statute of limitations for actions based upon 42 U.S.C. §§ 1983 and 1985:

"A statutory right of action is a 'civil action not otherwise provided for' within the meaning of § 15 of the limitation act and is governed by the five-year statute." 253 F.2d at p. 63.

Although the present action is based upon Section 1982 of the Civil Rights Act rather than Sections 1983 and 1985, it too is a cause of action created by statute. As such, we must agree with defendants and the district court that the rationale of our decision in *Wakat* governs and compels the application of Section 15 of the Illinois Limitations Act to Count I of each of the present actions.[10]

*The Limitations Rulings Are Not Premature.*

■ Where a complaint reveals that some claims are barred from recovery by limitations, they may be disposed of on a motion to dismiss. Kincheloe v. Farmer, 214 F.2d 604, 605, 75 S.Ct. 306, 99 L.Ed. 721 (7th Cir. 1954), certiorari denied, 348 U.S. 920; Anderson v. Linton, 178 F.2d 304, 309–310 (7th Cir. 1949). In many instances insufficient facts are contained in the complaint to afford an adequate basis for determining this issue. In the present case, however, despite allegations of conspiracy and concealment contained in the complaints, the court below concluded in each case:

"The instant complaint, it should be noted, does present sufficient background for immediate determination of the limitations question. Moreover, considering the scope of the present litigation and the consequent magnitude of the discovery to be under-

taken, it is particularly desirable that there be expeditious definition of the exact limits of the litigation in order to avoid unnecessary complexity and expense." 300 F.Supp. at pp. 218–219.

Plaintiffs argue that this ruling was improper in light of the allegations of their complaints. They contend that the alleged conspiracies preclude the passage of the limitations statute for all members of the classes until the last overt conspiratorial act has been disclosed. They also argue that the complaints contain allegations that the defendants concealed fact underlying the cause of action, thus tolling the statute. We feel, however, that the scope of further litigation should be delineated and confined within definite time limitations at this initial stage. This will facilitate disposition of the basic elements of the controversy and still allow for individual variations, exceptions and expansions as justice requires. We agree with the district court that at present insufficient basis has been presented for tolling the statute of limitations.

■ Bald allegations of conspiracy and concealment do not warrant delay in disposing of the question of the applicability of the statute of limitations. The statute of limitations does not toll automatically. Morgan v. Koch, 419 F.2d 993 (7th Cir. 1969). The allegation of a conspiracy alone is not an adequate basis from which fraudulent concealment may be inferred. Laundry Equipment Sales Corp. v. Borg-Warner Corp., 334 F.2d 788, 792 (7th Cir. 1964). Where courts have tolled limitations periods because of the existence of a conspiracy, the basis for the action has been the inherently secret nature of the conspiracy involved and its necessity as

---

10. Plaintiffs apparently do not contest the holding below that *Baker* Count II, based upon the federal antitrust laws, is governed by the federal four-year antitrust statute of limitations. 15 U.S.C. § 15b. Likewise, no objection has been

raised to the application of the four-year statute of limitations provided by state law to Count III of the complaints based upon the Illinois state antitrust statute. Ill.Rev.Stat. (1967) ch. 38, § 60–7.

an element in the cause of action. Cf. Allis-Chalmers Mfg. v. Commonwealth Edison Co., 315 F.2d 558, 562 (7th Cir. 1963).

In order to obtain the shelter of the federal doctrine of fraudulent concealment, plaintiffs must be prepared to adduce sufficient evidence to warrant the conclusion that defendants concealed the basic facts disclosing the existence of a cause of action and that plaintiffs remained in ignorance of those facts through no fault of their own. Bailey v. Glover, 88 U.S. 342, 349, 21 Wall. 342, 349, 22 L.Ed. 636. Where, as in the case of many conspiracies in violation of federal antitrust laws, the wrong is self-concealing, little need be added in order to justify tolling the statute. In the present case, however, we are persuaded that the language of Judge Friendly in Moviecolor Limited v. Eastman Kodak Company, 288 F.2d 80, 87–88, 90 A.L.R.2d 252 (2d Cir. 1961), is fundamentally applicable:

"Although the complaint liberally uses the adverb 'fraudulently' as to defendants' conduct, such allegations are not enough to make out a case of concealment. The complaint is inconsistent with any view either that plaintiff did not know of its injury in signing away its rights to the Keller-Dorian process, see Developments in the Law —Statutes of Limitations, 1950, 63 Harv.L.Rev. 1177, 1221, or that it did not know of the actions of the defendants and of French and American Keller-Dorian that led up to that. The case is thus quite unlike those in which a defendant has concealed the transaction sued upon, Bailey v. Glover, supra; Rosenthal v. Walker, 1884, 111 U.S. 185, 4 S.Ct. 382, 28 L.Ed. 395, or the facts rendering a known transaction actionable, Traer v. Clews, 1885, 115 U.S. 528, 6 S.Ct. 155, 29 L. Ed. 467; Exploration Co. v. United States, 1918, 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200; United States v. Diamond Coal & Coke Co., 1921, 255 U.S. 323, 41 S.Ct. 335, 65 L.Ed. 660, or his own identity, Holmberg v. Armbrecht, supra. Mere ignorance of evidence on which to establish a claim is not enough, even if the complaint here could be read as alleging that. Tinkoff v. United States, 7 Cir., 1954, 211 F.2d 890; Dawson, Fraudulent Concealment and Statutes of Limitation, 1933, 31 Mich.L.Rev. 875, 916. Even if no affirmative act of concealment is required in restraint of trade conspiracy cases, see Dawson, supra, at 880, 907–08; American Tobacco Co. v. People's Tobacco Co., [5 Cir., 1913, 204 F. 58,] supra; cf. 63 Harv.L.Rev. at 1221, in contrast to the usual rule where there is no fiduciary relationship, a point we do not decide, there is no allegation that plaintiff did not know in the late 1920's and early 1930's whatever the facts were as to joint action by defendants. Viewed with the benevolence proper on a motion under F.R.Civ.Proc. 12(c), the complaint does not make out, indeed it rather negatives, concealment, Suckow Borax Mines Consolidated, Inc. v. Borax Consolidated, Ltd., [9 Cir., 1950, 185 F.2d 196] supra; we do not read Crummer Co. v. DuPont, [5 Cir., 1955, 223 F.2d 238] supra, as pointing to a contrary result."

Here there is no indication in the complaints that defendants concealed from plaintiffs or that plaintiffs actually lacked knowledge of the facts disclosing the discriminatory sales practices upon which this case rests. There is no allegation that defendants attempted to create or perpetuate an erroneous impression in the minds of the plaintiffs that the homes were being sold to them at the same price, on the same terms, and under the same conditions as they would be sold to whites. However, in order to insure that individual members of the plaintiff classes are not unfairly deprived of relief because the facts of their particular cases may differ from those of the classes as a whole, they should have an opportunity to display

the necessary concealment at a subsequent date should the merits of the complaints be upheld.[11]

*The Statutes of Limitations Do Not Begin to Run Until Each Contract Terminates.*

After careful consideration, the district court concluded that the three statutes of limitations commenced running only upon the termination of the individual contracts. The court stated that the defendants "are alleged to have been reaping the unlawful benefit through continuing enforcement of their unlawful scheme." 300 F.Supp. at p. 220. We agree with this conclusion.

Plaintiffs have alleged wrongs committed by defendants which continue during the entire lives of the individual purchase contracts. They have alleged a conspiracy among defendants, the object of which was the establishment of a continuing relationship with individual plaintiffs. That relationship, by the same token, constituted a prolonged and continuing invasion of the rights of the purchasers. As in Hazeltine Research, Inc. v. Zenith Radio Corporation, 418 F. 2d 21 (7th Cir. 1969), the limitations periods commence to run from the last overt act of the conspiracy, permitting plaintiffs to recover "for damages suffered within the damage period as a result of an overt act repetitious of the unlawful pre-[limitation] period acts occurring in the damage period" (418 F.2d at p. 25). Because of the continuing

nature of the overt acts alleged, the statutes of limitations do not commence to run when the contracts were executed but when they terminate. Hanover Shoe v. United Shoe Machinery Corp., 392 U. S. 481, 502, n. 15, 88 S.Ct. 2224, 20 L. Ed.2d 1231.

Defendants are incorrect when they argue that here, as in Emich Motors Corporation v. General Motors Corp., 229 F.2d 714, 59 A.L.R.2d 159 (7th Cir. 1956) and Baldwin v. Loew's Inc., 312 F.2d 387 (7th Cir. 1963), only a single act was involved. In *Emich*, this Court concluded that the announcement by General Motors that Emich's dealership was to be cancelled and the actual cancellation of the leadership were so contiguous in time and of such a unitary character as to present but a single invasion of the rights of the plaintiff. And in *Baldwin*, acts of defendants which terminated outside the limitation period caused plaintiff to enter a lease with the third party. As those cases disclose, the touchstone of our inquiry must be the nature and extent of defendants' behavior, not the duration of plaintiff's injury. Here the defendants have entered into a series of contracts which manifest an on-going relationship between the individual participants and constituting the alleged invasion of the rights of the plaintiffs.

For the foregoing reasons, the limitations portions of the district court's orders are affirmed.[12]

---

11. The complaints also contain scattered allegations supporting the contention that certain courses of wrongful conduct engaged in by defendants were fraudulently deceptive and concealed. While we are not called upon to pass upon the merits of the claims or upon the effect of the individual allegations of fraudulent concealment, we note that reconsideration of the applicability of the statute of limitations may be in order insofar as its application is sought to certain members of the classes with regard to some peripheral wrongs. Thus the district court may be called upon to decide whether the alleged concealment of the appraised value of the mortgaged property of plaintiffs calls for recovery and tolling of the statute of limitations. Likewise, the misrepresentation of compliance with building codes may support recovery and require that, as to certain plaintiffs, the statute be tolled.

12. Defendants' objection to the filing of plaintiffs' reply brief is overruled. In No. 17750–17751, defendants' motion for taxing the costs of printing the opinion below in their appendix is granted but only as to printing the parts of the opinion not relating to the statute of limitations.