## COX et al., ADMINISTRATORS, et al. *v.* ROTH, ADMINISTRATOR.

No. 40.   Argued November 16, 1954.—Decided January 10, 1955.

*Douglas D. Batchelor* argued the cause for petitioners. With him on the brief was *David W. Dyer.*

*Jacob Rassner* argued the cause and filed a brief for respondent.

MR. JUSTICE CLARK delivered the opinion of the Court.

The main question presented in this case is whether an action under the Jones Act survives the death of the tortfeasor.   In *Nordquist* v. *United States Trust Co.,* 188 F. 2d 776, the Court of Appeals for the Second Circuit answered this question in the affirmative.   In the instant case the Court of Appeals for the Fifth Circuit answered it in the negative, but allowed recovery on the basis of state law, 210 F. 2d 76.   We granted certiorari in order to resolve this conflict.   347 U. S. 1009.

Jim Dean was employed as a seaman on the M. V. *Wingate,* owned and operated by Captain H. C. Farrington and Sid Cox, citizens of the United States and residents of Florida. The *Wingate* sailed on or about December 22, 1949, from Matanzas, Cuba, and while on the high seas foundered and was lost. Captain Farrington's body was washed ashore on the Cuban coast, but no trace was found of Dean or the vessel. Sid Cox died in January 1951 of causes bearing no relation to the disaster.

In October 1952, the respondent, as the administrator of the estate of Jim Dean, brought this action against the petitioners in the United States District Court for the Southern District of Florida. The complaint, brought under the Jones Act, 41 Stat. 1007, 46 U. S. C. § 688, alleged that Dean was a member of the crew of the *Wingate* and had lost his life through the negligence of its owners. The petitioners Cox and Thompson are the administrators of the estate of Sid Cox, while Henrietta and Howard Farrington are the distributees of H. C. Farrington. The estates of Cox and Farrington had been probated and that of Farrington closed before this action was filed. Respondent filed no notice of claim in either estate proceeding within the 8-month period required by § 733.16 of the Florida statutes.

The primary difficulty in this case stems from the fact that Congress, in passing the Jones Act, did not specifically enumerate the rights of seamen, but merely extended to them the same rights granted to railway employees by the Federal Employers' Liability Act. While the latter Act contained no clause specifically providing for the survival of actions against deceased tortfeasors, it did provide that the claim of the employee could be prosecuted against "the receiver or receivers or other persons or corporations charged with the duty of the management and operation of the business of a common carrier." 35 Stat. 66, 45 U. S. C. § 57. Since railroads are rarely, if ever,

owned by individuals, and since they are subject to various regulations which prevent their discontinuing business, a clause permitting suit against the personal representative of the individual owner of a railroad was unnecessary. See 41 Stat. 477, 49 U. S. C. § 1 (18). Congress fully provided for the corporate analogues of death when it provided that suit might continue against the receiver or successor corporation of the railroad. But where seamen covered by the Jones Act work aboard vessels owned by individuals, literal application of the words of the FELA would result in the denial of recovery against the personal representative of the tortfeasor. This, we feel, would frustrate the congressional purpose of "the benefit and protection of seamen who are peculiarly the wards of admiralty," *The Arizona* v. *Anelich,* 298 U. S. 110, 123. The Jones Act, in providing that a seaman should have the same right of action as would a railroad employee, does not mean that the very words of the FELA must be lifted bodily from their context and applied mechanically to the specific facts of maritime events. Rather, it means that those contingencies against which Congress has provided to ensure recovery to railroad employees should also be met in the admiralty setting. Applying such a rule here, we conclude that Congress, having provided that railroad employees could recover regardless of the "survival" of the tortfeasor railroad, intended that the death of the tortfeasor should not defeat recovery under the Jones Act. As the Court said in *Markham* v. *Cabell,* 326 U. S. 404, 409, "The policy as well as the letter of the law is a guide to decision. Resort to the policy of a law may be had to ameliorate its seeming harshness or to qualify its apparent absolutes . . . . The process of interpretation also misses its high function if a strict reading of a law results in the emasculation or deletion of a provision which a less literal reading would preserve."

The extreme harshness of the old common-law rule abating actions on the death of the tortfeasor flies in the face of the expressed congressional purpose to provide for "the welfare of seamen." The Jones Act "As welfare legislation . . . is entitled to a liberal construction to accomplish its beneficent purposes." *Cosmopolitan Co.* v. *McAllister,* 337 U. S. 783, 790. Since the decision here is confined to an interpretation of the Jones Act, there is no need to consider the "slender basis" for the general admiralty rule against such survivorship of actions. See *Just* v. *Chambers,* 312 U. S. 383, 387, n. 4. Nevertheless, in considering the harshness of the rule sought to be imposed under the Jones Act, we do note that advancing civilization and social progress have brought 43 of our States to include in their general law the principle of the survival of causes of action against deceased tortfeasors, and that such recovery, rather than being exceptional, has now become the rule in almost every common-law jurisdiction. See the discussion by Roscoe Pound on death statutes as part of the general law, 13 NACCA L. J. 188–189 (May 1954).

Petitioners make the further claim that even if the Jones Act is interpreted to allow an action to proceed against the personal representatives of the tortfeasors, this suit must fail because respondent did not comply with the Florida statute governing the distribution of decedents' estates. The short answer to this is that Congress, within its constitutional power, decreed a 3-year statute of limitations uniformly throughout the Nation, *Panama R. Co.* v. *Johnson,* 264 U. S. 375, 392, and no state statute can diminish this period.

*Affirmed.*