Nancy TURNER, next kin of Farrell W. Turner, and personal representative of the Estate of Farrell W. Turner, Plaintiff,

v.

TENNESSEE VALLEY AUTHORITY, Owner of the LUCY E, Defendant.

No. 3–86–0202.

United States District Court, M.D. Tennessee, Nashville Division.

Dec. 30, 1986.

R. Jan Jennings, Nashville, Tenn., for plaintiff.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Deputy Gen. Counsel, Thomas C. Doolan, James G. Touhey, Jr., Knoxville, Tenn., for defendant.

## MEMORANDUM

WISEMAN, Chief Judge.

Plaintiff's decedent, Farrell Turner, was killed when he was lost overboard from the Lucy E, on which he labored for his employer the Tennessee Valley Authority (TVA). According to the complaint, TVA maintained the Lucy E in an improper and negligent fashion, with the result that the ship was an unsafe workplace lacking appropriate safety appliances and devices. The complaint further alleges that these conditions had been brought to TVA's attention, that no corrective action had been taken, and that these conditions were a proximate cause of Mr. Turner's death.

Mrs. Turner brought this action as her decedent's personal representative against TVA, invoking the Jones Act, 46 U.S.C. § 688. TVA has filed a motion to dismiss on the ground that the Federal Employees Compensation Act, 5 U.S.C. § 8101 *et seq. (Compensation Act)*, is Mrs. Turner's exclusive remedy and thus bars her Jones Act claim.

For the reasons stated below, the Court agrees with TVA and therefore grants the motion to dismiss.

## I. *Statutory Framework*

### A. *TVA ACT*

Congress created TVA by the Tennessee Valley Authority Act of 1933, 16 U.S.C. § 831 *et seq.* Section 831c provides that TVA "may sue and be sued in its corporate name;" section 831b provides, however, that *"[i]nsofar as applicable,* the benefits of [the Compensation Act] shall extend to persons given employment under the provisions of this chapter." (emphasis added).

### B. *Compensation Act*

The Compensation Act was enacted in 1916. In 1949 the following language was added:

The liability of the United States *or an instrumentality thereof* under this subchapter or any extension thereof with respect to the injury or death of an employee *is exclusive* and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute. *However, this subsection does not apply to a master or a member of a crew of a vessel.*

5 U.S.C. § 8116(c) (emphasis added).

### C. *Jones Act*

As amended in 1920, the Jones Act provides in part:

[I]n case of the death of any seaman as a result of any ... personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable.

By the reference in the final clause to statutes of the United States regarding the right of action of railway employees, the Jones Act incorporates the principles of the Federal Employers Liability Act (FELA), 45 U.S.C. § 51 et seq.

## II. *Statutory Analysis*

Plaintiff argues that, although her decedent was an employee of TVA, she nonetheless has a right of action against TVA because the Compensation Act is not applicable to her Jones Act claim. Reduced to its essentials, her argument runs as follows:

The FELA, which was enacted in 1908, permits suits against the government by federal employees. The Jones Act was enacted in 1920 and incorporates the legal standards of the FELA. The Compensation Act was enacted in 1916, after the FELA was established law. Between 1916 and 1949, the Compensation Act was not an exclusive remedy, but rather one which could be elected or bypassed in favor of the FELA or the Jones Act. By the language referring to seamen, the 1949 amendment to the Compensation Act preserved the pre–1949 rights of seamen to proceed against the government under the Jones Act-FELA. Later decisions of the Supreme Court [1] eliminated the rights of federally-employed seamen to sue under the Public Vessels Act, 46 U.S.C. § 781 *et seq.*, and under the Suits in Admiralty Act, 46 U.S.C. § 741 *et seq.*, but did not affect their right to sue under the Jones Act. Finally, although the Compensation Act generally governs all claims by TVA employees against their employer, the "insofar as ap-

plicable" language in the TVA Act recognizes the historical ability of seamen to sue the government under the Jones Act and thus does not bar a TVA *seaman's* claim.

By the reasoning outlined above, plaintiff construes the statutory scheme broadly and the cases narrowly to make a skilled and forceful argument that the Supreme Court never has expressly decided that Jones Act claims of federally employed seamen are barred by the Compensation Act, that this Court therefore is not bound by precedent, and that the broad policies underlying the Jones Act specifically and the overall rights of seamen generally support a liberal interpretation that would "preserve" the TVA seamen's Jones Act rights.

This Court agrees with plaintiff's assertions that the rights of seamen and the policies underlying the Jones Act must be viewed with liberality. The Court does not agree, however, with plaintiff's reading either of the cases or of the statutory scheme. Plaintiff's view of the place of Jones Act claims within the framework of remedies available to federal seamen is seriously flawed and, therefore, must be rejected.

Plaintiff's view rests on three propositions: (1) Before 1949, federally employed seamen had well-established rights to sue the government; (2) in 1949, Congress intended to preserve these well-established rights by the reservations about seamen inserted in the Compensation Act; and (3) the later decisions in *Johansen* and *Patterson* dealt only with the Public Vessels Act and Suits in Admiralty Act and therefore had no significance for Jones Act claims against the government. Each of these propositions is unsound, as will be shown below:

### A. *Pre–1949 Rights.*

To begin with, plaintiff's assertion that before 1949 both FELA and Jones Act claims were permissible against the federal government misreads the cases. Plaintiff cites *Dahn v. Davis*, 259 U.S. 421, 428, 42

---

**1.** To wit, *Johansen v. United States,* 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051 (1952); *Patterson v.* *United States,* 359 U.S. 495, 79 S.Ct. 936, 3 L.Ed.2d 971 (1959).

S.Ct. 320, 321, 66 L.Ed. 696 (1922) for the proposition that a federal railway worker could elect a remedy under either FELA or under the Compensation Act. Relying on *Dahn*, plaintiff then asserts that the Jones Act incorporates FELA, and therefore that before 1949 a seaman also had a choice of remedies between the Jones Act and the Compensation Act.

*Dahn*, however, does *not* flatly state that federal railway employees may elect between the FELA and Compensation Act remedies. The *Dahn* plaintiff's claim accrued while the nation's railways were federalized during World War I pursuant to the Federal Control Act of March 21, 1918, 40 Stat. 451. That Act, which covered only the period of wartime federal control of the railroads prior to repeal, specifically provided for liability of the United States during that period. The Control Act was an explicit waiver of federal sovereign immunity against various claims, including FELA claims, during this limited period of federalization. Absent a specific Congressional waiver, however, *Dahn* provides no authority for a general rule of governmental liability to FELA claims by federal employees, or to Jones Act claims by federal seamen.[2]

Neither FELA nor the Jones Act can be viewed as Congressional waivers of sovereign immunity. FELA defines the proper

defendant as "every common carrier";[3] the Jones Act merely incorporates FELA by reference.[4] That Congress had not viewed the Jones Act as an independent waiver of federal sovereign immunity is illustrated well by the legislative history of the World War II–era Clarification Act, 57 Stat. 45, 50 U.S.C.A. App. § 1291. Both the House and Senate reports on that Act reflect the view that the Jones Act remedy is historically available only against private employers and that, when a Jones Act remedy is allowed by Congress to go forward against the United States, it is enforceable *not independently* but pursuant to the Suits in Admiralty Act, 46 U.S.C. § 741 *et seq.* See S. Rep. No. 62, 78th Cong., 1st Sess. and H.Rep. No. 107, 78th Cong. 1st Sess., *cited in Hust v. Moore-McCormack Lines*, 328 U.S. 707, 742 n. 9, 66 S.Ct. 1218, 1220 n. 9, 90 L.Ed. 1534 (1946) (Reed, J., dissenting); *see also Nelson v. United States*, 639 F.2d 469, 479 (9th Cir.1980).

In summary, federally employed seamen's rights to sue the government via the Jones Act were at best questionable before 1949.

**B.** *The 1949 Amendment*

Uncertainty as to the exclusiveness of a Compensation Act remedy before 1949 existed not only for seamen but for other categories of federal employees as well.

**2.** Plaintiff's citation of *Panama R. Co. v. Minnix*, 282 F. 47 (5th Cir.1922) is similarly flawed. The Panama Railroad Co. at that time was an independently chartered corporation whose sole stockholder was the United States. The court expressly held that the liability of the corporation to suit was not affected by federal ownership, and that Congress had manifested expressly its intent that the railroad, and therefore ultimately the government, be subject both to FELA liability and to the Compensation Act remedy. *Id.* at 49–50.

**3.** 45 U.S.C. § 51. The Supreme Court has held that by operating a railroad a state consents to waive its sovereign immunity and therefore subjects itself to FELA liability. *Parden v. Terminal Railway*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). Whatever the continuing vitality of *Parden, see Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), the logic of a state's waiver of its Eleventh Amendment immunity would

not automatically extend to Congressional intent to waive federal sovereign immunity. Apart from the possible differences between a state waiver in the face of a Congressional enactment and a Congressional waiver manifest in its own enactment, the behavior of Congress in enacting other express waivers of federal sovereign immunity for maritime torts provides independent evidence upon which its intent to waive immunity by the Jones Act must be assessed. *See also* note 4 *infra.*

**4.** The incorporation of FELA principles by the Jones Act is not to be "mechanically" applied but rather "interpreted in harmony with the established doctrine of maritime law of which it is an integral part," especially when FELA contains no "definite command" on a given subject. *Cox v. Roth*, 348 U.S. 207, 209, 75 S.Ct. 242, 243, 99 L.Ed. 260 (1955); *The Arizona v. Anelich*, 298 U.S. 110, 120, 123, 56 S.Ct. 707, 710, 711, 80 L.Ed. 1075 (1936).

The purpose of the 1949 amendment was to liberalize benefits for federal employees while at the same time to "make it clear that the right to compensation benefits under the act is exclusive," thus replacing "needless and expensive litigation ... with measured justice." S.Rep. No. 836, 81st Cong., 1st Sess., *reprinted in* 1949 U.S. Code Cong. & Ad. News 2125, 2135.

The caveat concerning seamen was added to the bill by a floor amendment from Senator Morse and accepted by Senator Douglas, the bill's manager. The seamen proviso, however, means less than appears from the face of the statute. According to Senator Douglas, the amendments sought "merely to make sure that seamen shall lose no existing rights." 95 Cong.Rec. 13608, 13609, *quoted in Johansen v. United States*, 343 U.S. at 437, 72 S.Ct. at 855.

The Supreme Court in *Johansen* reviewed this legislative history exhaustively and, it would seem, definitively. According to the Court, Senator Morse's amendment was prompted by the fact that no seamen's groups had participated in hearings on the bill; he sought "no more than to preserve to seamen any rights which they might have (had) in addition to compensation." 343 U.S. at 437, 72 S.Ct. at 855.

Contrary to plaintiff's suggestion here, the 1949 amendment to the Compensation Act cannot be interpreted to reflect any affirmative belief on the part of Congress that seamen had *any* pre–1949 right to sue the government. The amendment was intended solely to preserve a somewhat uncertain status quo until the Supreme Court would later resolve the uncertainty:

> [T]he 1949 amendments, far from changing the law respecting seamen's remedies, do not even reflect a belief on the part of Congress that the remedy of compensation is not exclusive. There is nothing in these amendments to affect consideration of whether petitioners' sole remedy is under the Federal Employees Compensation Act.

*Johansen,* 343 U.S. at 438, 72 S.Ct. at 856.

### C. *Post–1949 Decisions*

In 1952, the Supreme Court decided that federally employed seamen could not sue the government under the Public Vessels Act. *Johansen, supra.* In 1959, the Court similarly held that federal seamen on merchant vessels were confined to the Compensation Act and could not sue under the Suits in Admiralty Act. *Patterson, supra.*

Plaintiff urges that these decisions do not affect governmental liability under the Jones Act. A consideration of the context of these decisions, of their progeny, and of the policies and the context that surround them, convinces this Court otherwise.

Plaintiff first notes that neither decision mentions the Jones Act in terms. *Johansen,* however, used sweeping terms to announce the exclusivity of remedy available to public-vessel seamen. The Court said, without qualification, that the Compensation Act was "the exclusive remedy for civilian seamen on public vessels" and that "[t]here is no reason to have two systems of redress." *Johansen,* 343 U.S. at 439–441, 72 S.Ct. at 856–857. In *Patterson,* both those sweeping statements were reaffirmed and extended to merchant vessels. *Patterson,* 359 U.S. at 496–97, 79 S.Ct. at 937.

Furthermore, while the Supreme Court in neither *Johansen* nor *Patterson* used the phrase "Jones Act" to describe any of the claims in the cases at bar, a close reading of those cases and the decisions below reveals that the claimants apparently were seeking Jones Act relief. Both *Johansen* and *Patterson* consolidated multiple cases on appeal; each included a case in which a representative plaintiff sought damages for wrongful death. *Mandel v. United States,* 191 F.2d 164 (3d Cir.1951) *aff'd sub nom. Johansen v. United States; Patterson v. United States,* 258 F.2d 702 (2d Cir.1958) *aff'd,* 359 U.S. 495, 79 S.Ct. 936, 3 L.Ed.2d 971 (1959). At the time these cases were brought, a seaman's remedy for maritime wrongful death against an employer lay pursuant only to the Jones Act; not until 1970 did the Supreme Court overrule its earlier holding that there was no cause of action for death under general

maritime law. *See Moragne v. States Marine Lines,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) *(overruling The Harrisburg,* 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886)).

It would appear, then, that Jones Act relief was at least impliedly sought in both *Johansen* and *Patterson,* yet both suits were dismissed outright.

In addition to the unexpressed Jones Act claims apparently concealed in the cases immediately at bar in *Johansen* and *Patterson,* there was an express Jones Act claim in a lower court decision expressly disapproved by the *Johansen* Court. *See Johnson v. United States,* 186 F.2d 120, 121 (4th Cir.1950) ("suit for damages against the United States under the Public Vessels Act, claiming the benefits of the Jones Act"), *disapproved by Johansen,* 343 U.S. at 439, 72 S.Ct. at 856.

It is true that there is no Supreme Court or Sixth Circuit decision expressly barring a Jones Act claim by a federal seaman. The full context of *Johansen* and *Patterson* recited above, coupled with the unanimity of subsequent lower court opinions [5] and the concurrence of the commentators,[6] however, persuades the Court that the unavailability of the Jones Act remedy here is in reality a settled question.

Finally, the need for a uniform and predictable set of remedies both for seamen generally and for federal employees weigh strongly against creating a Jones Act exception to the exclusivity provision of the Compensation Act. Developments in admiralty law since World War II all have tended toward the direction of uniformity of remedy. The Supreme Court, for example, has allowed Jones Act juries to consider unseaworthiness and maintenance and cure claims historically tried to the admiralty court,[7] and has provided a general maritime remedy for wrongful death caused by unseaworthiness to match the Jones Act remedy for death due to negligence.[8] Permitting a fragmentary Jones Act claim would be at cross-purposes to this history and to the Court's philosophy from the first that the Jones Act brought new remedies *into* maritime law and modified that law rather than creating new remedies apart from admiralty. *The Arizona v. Anelich, supra,* 298 U.S. at 119, 56 S.Ct. at 709; *Panama R. Co. v. Johnson,* 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748 (1924).

To allow an exception for a seaman's Jones Act claim when other remedies would be barred not only would run against the tide toward uniformity in admiralty. What plaintiff urges also would contravene the broad principle that, "where there is a compensation statute that reasonably and fairly covers a particular group of workers, it presumably is the exclusive remedy to protect that group" and that Congress " 'should not be held to have made exceptions to that system without specific legislation to that effect.' " *United States v. Demko,* 385 U.S. 149, 151–52, 87 S.Ct. 382, 383, 17 L.Ed.2d 258 (1966) (quoting *Johansen,* 343 U.S. at 441, 72 S.Ct. at 857).

The *Demko* Court noted that "compensation laws are practically always thought of as substitutes for, not supplements to, common-law tort actions," and that a series of decisions including *Patterson* and *Johansen* had "established as a general rule the

---

5.  *See, e.g., Flippo v. Tennessee Valley Authority,* 486 F.2d 612 (5th Cir.1973); *Smith v. United States,* 346 F.2d 449, 453 (4th Cir.), *cert. denied,* 382 U.S. 878, 86 S.Ct. 163, 15 L.Ed.2d 119 (1965); *Petition of the United States,* 212 F.Supp. 214 (E.D.La.1962); *aff'd sub nom. Jarvis v. United States,* 342 F.2d 799 (5th Cir.), *cert. denied,* 382 U.S. 831, 86 S.Ct. 70, 15 L.Ed.2d 75 (1965); *Mills v. Panama Canal Co.,* 272 F.2d 37 (2d Cir.1959), *cert. denied,* 362 U.S. 961, 80 S.Ct. 877, 4 L.Ed.2d 876 (1960); *cf. Petition of the United States,* 367 F.2d 505, 512 (3d Cir.1966) (holding government vicariously liable under Jones Act for acts of its agent), *cert. denied,* 386 U.S. 932, 87 S.Ct. 953, 17 L.Ed.2d 805 (1967).

6.  *See, e.g.,* R. Baer, *Admiralty Law of the Supreme Court* § 4.1 (3d ed. 1979); G. Gilmore & C. Black Jr., *The Law of Admiralty* § 6.7 & n. 23 (2d ed. 1975); M. Norris, *The Law of Seamen* § 28.15 (4th ed. 1935).

7.  *See Fitzgerald v. United States Lines,* 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963).

8.  *See Moragne v. States Marine Lines, supra.*

exclusivity of remedy under [ ] compensation laws." Perhaps significantly, the Court observed in a footnote at this point the "unanimity" with which the lower federal courts had held that the Compensation Act barred claims under, *inter alia,* the *Jones Act. Demko,* 385 U.S. at 151 & n. 4, 87 S.Ct. at 383 & n. 4.

For all the reasons summarized above, defendant TVA's motion to dismiss is granted, and plaintiff must seek compensation via the administrative avenue provided by the Compensation Act. An appropriate Order shall issue.