# HURLEY et al,
## *Appellants,*

### *v.*

# SHINMEI KISEN K.K. et al,
## *Respondents.*

## (A8702-00766; CA A49019)

779 P2d 1041

Charles Robinowitz, Portland, argued the cause and filed the briefs for appellants.

John R. Brooke, Portland, argued the cause for respondents Shinmei Kisen K.K., Shinto Shipping Co., LTD., Ace Maritime Co., LTD., and Diamond Marine Co., S.A. With him on the brief was Wood Tatum Mosser Brooke & Landis, Portland.

Dean D. DeChaine, Portland, argued the cause for respondent Yuasa Trading Co. (America), Inc. With him on the brief were Jonathan D. Allred and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Before Richardson, Presiding Judge, and Riggs and Edmonds, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiffs brought this action to recover damages resulting from injuries that plaintiff John Hurley (Hurley) sustained while working as a longshoreman on the vessel Green Maya. They appeal from the judgments for defendants[1] and assign error to the trial court's summary judgments in favor of defendants Ace Maritime Co., Diamond Marine Co. and Yuasa Trading Co.

Defendant Shinmei Kisen K.K. is the owner of Green Maya. It "bareboat chartered" the vessel to Ace, which "sub-bareboat chartered" it to Diamond, which "time chartered" it to defendant Shinto Shipping Co.,[2] which "voyage chartered" it to Yuasa.[3] The relationship between Shinto and Yuasa was governed by a standard Beizai (American Logs/Lumber) Charter Party. Clause 5 of that instrument provides:

"Charterers to load, stow, trim, secure and discharge the cargo free of risks and expenses to Owners."

Clause 34 provides:

"Supercargo, if necessary, to be appointed by Charterers at their risk and expenses."

Yuasa chartered Green Maya to transport a shipment

---

[1] The trial court entered two judgments, one in favor of defendant Yuasa Trading Co. and the second in favor of the other defendants.

[2] Although plaintiffs have named Shinmei and Shinto as respondents, they make no assignments relating to the judgment for those defendants, and we affirm as to them.

[3] We quote, without necessarily endorsing in their entirety, the helpful explanations in Yuasa's brief:

"A 'bareboat charter' occurs where the shipowner charters or leases the vessel to the bareboat charterer for a period of time *and* no longer has any operational control over the vessel or the vessel's officers or crew members. The officers and crew members of the vessel are hired by and under the control of the bareboat charterer. In this case the employer of the ship's officers and crew should be Diamond.

"A 'time charter' occurs where a shipowner or bareboat charterer, as here, charters or leases the vessel to the time charterer for a period of time but the shipowner or bareboat charterer still hires and controls the officers and crew on the vessel and maintains operational control over the vessel. Thus, in this case the employer of the ship's officers and crew should be Diamond.

"A 'voyage charter' is like a time charter in that the voyage charterer has no operational control over the vessel and does not hire or control the officers or crew. It differs from the time charter in that the voyage charterer charters or leases the vessel for only one voyage." (Emphasis Yuasa's.)

of logs from Longview, Washington, to Japan. It hired a stevedoring concern to load the logs on the vessel and to provide related services. An employe of the stevedore was the supercargo aboard the vessel on February 9, 1984, when Hurley was injured.

Plaintiffs brought this action on February 4, 1987, within the three-year limitation period of 46 USC § 763a.[4] They named Shinmei, Shinto and Yuasa as defendants and alleged that a member of Green Maya's crew was negligent in tightening a log lashing wire, causing another longshoreman to trip and to hit Hurley with an object that he was carrying. Plaintiffs' theories were that Shinmei and Shinto were vicariously liable as employers for the crew member's negligence and that Yuasa and the supercargo, as its purported agent, were responsible for supervising the crew and for the safe performance of the operation. On May 15, 1987, more than three years after Hurley's injury, plaintiffs amended their complaint to add Ace and Diamond as defendants and advanced essentially the same theory against them as against Shinmei and Shinto. Plaintiffs did not attempt or accomplish service on Ace or Diamond within 60 days of the filing of the amended complaint, but both were eventually served.

The trial court granted Ace's and Diamond's motion for summary judgment on the ground that the action was barred by the Statute of Limitations as to them. Yuasa moved for summary judgment on the grounds that the supercargo was not its agent and that neither it nor he were responsible for the acts of the crew or for Hurley's injury. That motion was also allowed. Plaintiffs assign error to both rulings.

Ace's and Diamond's limitations argument is based on plaintiffs' failure to serve them within 60 days after filing the amended complaint. ORS 12.020 provides:

"(1) Except as provided in subsection (2) of this section, for the purpose of determining whether an action has been commenced within the time limited, an action shall be

---

[4] 46 USC § 763a provides:

"Unless otherwise specified by law, a suit for recovery of damages for personal injury or death, or both, arising out of a maritime tort, shall not be maintained unless commenced within three years from the date the cause of action accrued."

The parties agree that it is the applicable Statute of Limitations.

deemed commenced as to each defendant, when the complaint is filed, and the summons served on the defendant, or on a codefendant who is a joint contractor, or otherwise united in interest with the defendant.

"(2) If the first publication of summons or other service of summons in an action occurs before the expiration of 60 days after the date on which the complaint in the action was filed, the action against each person of whom the court by such service has acquired jurisdiction shall be deemed to have been commenced upon the date on which the complaint in the action was filed."

Ace and Diamond do *not* contend that the action would be barred as to them on the basis of when the amended complaint was filed. *See* note 6, *infra.* They instead rely on ORS 12.020 and argue:

"Plaintiff did not commence service of summons upon Ace Maritime and Diamond Marine until more than sixty days had expired from the date of filing the amended complaint. By failing to serve Ace Maritime and Diamond Marine within sixty days, plaintiff[s'] action against Ace Maritime and Diamond Marine for statute of limitation purposes, is deemed filed when service of summons is made. ORS 12.020(2). This means plaintiff[s'] action against Ace Maritime and Diamond Marine was not filed within the three year statute of limitations."

Plaintiffs do not expressly disagree with Ace's and Diamond's understanding of what the effect of ORS 12.020 would be if it were applicable, but argue that it is inapplicable to this action that is based on federal maritime law. Plaintiffs contend that, under FRCP 3, their action was deemed commenced against Ace and Diamond as of the time that they filed their amended complaint. Ace and Diamond respond that the Federal Rules of Civil Procedure have no application in Oregon courts and that, by electing to bring their action in state court, plaintiffs are subject to ORCP 3 and ORS 12.020, Oregon's procedural law relating to when an action is commenced.[5]

---

[5] In *Wells v. City of Portland,* 102 FRD 796 (D Or 1984), the federal district court rejected an argument similar to Ace's and Diamond's and held that ORS 12.020 is inapplicable in federal court actions "where a federal matter or cause of action is involved." 102 FRD at 800. The reasoning in *Wells* is persuasive. However, it does not meet Ace's and Diamond's argument directly, because it relates to actions brought in federal court.

■　　The United States Supreme Court has held repeatedly that, when actions under the Jones Act, 46 USC § 688, are brought in state courts, the limitation period of that act is applicable and the actions cannot be barred by state statutes prescribing shorter periods. *McAllister v. Magnolia Petro. Co.,* 357 US 221, 78 S Ct 1201, 2 L Ed 2d 1272 (1958); *Cox v. Roth,* 348 US 207, 75 S Ct 242, 99 L Ed 260 (1955); *Engel v. Davenport,* 271 US 33, 46 S Ct 410, 70 L Ed 813 (1926). The logic of those decisions extends to other federal statutes of limitations, like 46 USC § 763a, which Congress has specifically made applicable to particular rights of action under federal maritime law. As the Court indicated in *McAllister,* the application of the longer federal limitation periods is necessary to afford "seamen 'the full benefit of federal law,' *Garrett v. Moore-McCormack Co.* [317 US 239, 243, 63 S Ct 246, 87 L Ed 239 (1942)], to which they are entitled when state courts undertake to adjudicate claims under the federal maritime law." 357 US at 226; *see also Kermarec v. Compagnie Generale,* 358 US 625, 79 S Ct 406, 3 L Ed 2d 550 (1959).

Ace and Diamond agree that this action arises under federal maritime law and that 46 USC § 763a applies to it. However, they contend that ORS 12.020 is also applicable and that the state statute governs the procedural question of when the action was "commenced" in the state court. Plaintiffs argue that ORS 12.020 relates to the time within which the action can be brought and, as such, it is a substantive provision of state law and is inapplicable to this action, which is governed by federal law.

We think that it is unhelpful to try to cubbyhole ORS 12.020 as a procedural statute relating to commencement of actions or a substantive provision relating to limitation periods. Clearly, it is both. The statute defines commencement *only* for purposes of determining whether actions are timely under Statutes of Limitations, and it constitutes the *only* exception to the Oregon rule, which, like the federal rule, makes the time of filing the time of commencement. ORCP 3; *see* Merrill, *Oregon Rules of Civil Procedure: 1988 Handbook* 6. As such, it is a part of the state statutory scheme governing limitations of actions as well as a part of the procedural framework for determining when actions are commenced.

The "procedural" label that Ace and Diamond place

on ORS 12.020 does not obscure the fact that they rely on the statute to bar an action that would be timely under federal law. If applied in that manner, ORS 12.020 would deny plaintiffs "the full benefit of federal law," as much as the application of a shorter state limitation period would. The state statute cannot be so applied consistently with the Supreme Court decisions that we have discussed.

Ace and Diamond also argue that FRCP 3 may not be used to determine when the action was commenced, because it is a federal procedural rule and Oregon courts must apply the Oregon rules of procedure to actions before them. It is unclear whether Ace and Diamond intend that argument to stand independently of their contentions regarding ORS 12.020. Assuming that they do, the argument fails for essentially the same reason that the ORS 12.020 arguments fail. It is also somewhat circular. The thrust of the argument is that 46 USC § 763a contains no internal definition of "commenced," that FRCP 3 would supply that definition if the action had been brought in federal court, but that the federal rule cannot perform that function in a state court proceeding.

It is clear that, if plaintiffs had proceeded in federal court, FRCP 3 would make the time that the pleading was filed the time of commencement for purposes of the federal limitation. *See West v. Conrail,* 481 US 35, 107 S Ct 1538, 95 L Ed 2d 32 (1987). Ace and Diamond maintain that the federal statute cannot be given that effect in this state court action, because FRCP 3 is a rule of federal procedure. They miss the point. It is the federal statute, not the federal rule, that can and must be applied here. The word "commenced" is part of 46 USC § 763a, and it is immaterial that the meaning of the term, as an operative part of the statute, is derived from the rule rather than from an internal definition. It is the way in which the statute *operates* under federal law, not its mere words, that constitutes the federal benefit that the Oregon courts must accord plaintiffs.

Ace's and Diamond's argument fails for the further reason that it would achieve by indirection what we have concluded they may not achieve directly. Their thesis is that, because FRCP 3 and ORCP 3 are rules of procedure, the courts of Oregon may not apply the federal rule and must apply the state rule and the statute, ORS 12.020, that the rule

incorporates *sub silentio.* Given Ace's and Diamond's understanding of ORS 12.020, the effect would be that plaintiffs' state court action would be barred by 46 USC § 763a, while the action would not be barred if it had been brought in federal court and the federal statute had been applied in accordance with federal law. That is precisely the effect that we concluded we could not give ORS 12.020 in rejecting Ace's and Diamond's argument based on the statute itself. We hold that the action is not time-barred and that the trial court erred by granting Ace's and Diamond's motion for summary judgment.[6]

Plaintiffs contend that the court also erred by granting the summary judgment for Yuasa. Plaintiffs presented "custom evidence," in the form of an affidavit from a retired supercargo, that the duties of that job would include supervising the crew and assuring the safe and satisfactory loading and securing of cargo under the circumstances here. Plaintiffs also contend that, although the supercargo was not Yuasa's employe, it was responsible for his performance under Clause 34 of the Beizai Charter Party and was responsible for loading, stowing, trimming, securing and discharging the cargo under Clause 5.

Yuasa contends that, as a matter of Japanese and American maritime law, the only risk for which Yuasa could be responsible under Clause 5 is damage to cargo and that responsibility for personal injuries resulting from a crew's handling of cargo remains that of the shipowner or bareboat charterer. Plaintiffs argue that American law is to the contrary. In fact, neither the United States nor Japan, as distinct

---

[6] Although we decide the assignment of error on the basis of the issue formulated by the parties, we do not imply agreement with Ace's and Diamond's understanding of how ORS 12.020 would apply to analogous facts in an action under state law. Although Ace and Diamond were added as parties after the three-year period had run, they do not argue that the action is untimely for that reason. The apparent reason why they do not is that they concede, for purposes of their motion, that, under ORCP 23C, the amended complaint relates back to the timely original pleading. However, ORS 12.020 cannot give rise to a time bar *in itself.* A plaintiff's failure to serve the defendant within 60 days after filing his complaint does not create a limitations problem, unless the action becomes time-barred for other reasons before service is effected. *See Bell et al v. Quaker City F. & M. Ins. Co.,* 230 Or 615, 620, 370 P2d 219 (1962). It is at least questionable whether ORS 12.020 can have any bearing in a situation where the complaint relates back to an earlier one that was filed within the limitation period.

Our disposition of the limitation issue makes it unnecessary for us to discuss the parties' contentions concerning the time of discovery rule.

from the one Japanese and one American decisionmaker on which Yuasa relies and the one American decisionmaker on whom plaintiffs rely, has any controlling law concerning the meaning of the contractual language.

■    Yuasa points to much evidence that tends to show that the supercargo was not engaged by it, was not responsible to it, was not responsible for the supervision or safety of the operation and exercised no such responsibilities. However, we conclude that plaintiffs' evidence of the customary responsibilities of supercargoes, considered together with the two quoted provisions of the Beizai Charter Party, was sufficient to create a question of fact as to whether the supercargo was responsible as Yuasa's agent for the supervision of the crew and the safety of the loading and related operations.

■    Yuasa also argues:

> "There is no evidence that the method being used to load and secure the logs was wrong or improper. The alleged sole cause of the accident is that a vessel's crew member happened to raise or pull a lashing wire at one given moment, just when longshoreman Tift happened to walk by longshoreman Hurley. There is no way that a supercargo, a walking boss, or anyone else could supervise this vessel's crew member in order to prevent this accident. The law simply does not require any supervisor to have constant and unrelenting control over the exact placement of every longshoreman's foot and the exact moment every wire is lifted."

That argument, too, must be addressed to the jury.

Judgment for Ace Maritime Co., Diamond Marine Co. and Yuasa Trading Co. reversed and remanded; judgment for Shinmei Kisen K.K. and Shinto Shipping Co. affirmed.