PROST, Circuit Judge,
dissenting.
The majority’s opinion clearly conflicts with binding Supreme Court precedent, the plain language of the Vaccine Act, and decades of consistent decisions by the United States Court of Federal Claims. I must respectfully dissent.
I
The majority holds that Ms. Figueroa’s petition with the National Vaccine Compensation Program was permissible because she was the legal representative of Mr. Figueroa’s estate and Mr. Figueroa’s cause of action for injuries he sustained from a vaccine survived his unrelated death. To reach that conclusion, the majority does not rely on any express language in the Vaccine Act; the Act does not specifically provide for the survival of such causes of action under the Program. Instead, the majority reads a “presumption” into federal common law that personal injury actions arising under federal law survive the death of a plaintiff absent “a-statutory provision to the contrary.” Majority Op. at 1319. Therefore, in the majority’s view, because the Vaccine Act is silent regarding survivorship, causes of action arising under the Vaccine Act survive.
The majority’s conclusion, however, is directly opposed to the outcome mandated by Supreme Court precedent. The Court has held that, if a federal law creating a remedial cause of action for personal injuries is silent regarding survivorship, causes of action under the law do not survive the death of a plaintiff. Mich. Cent. R. Co. v. Vreeland, 227 U.S. 59, 67, 33 S.Ct. 192, 57 L.Ed. 417 (1913) (holding that a cause of action for personal injury under federal law is extinguished by the death of the injured party “unless th[e] Federal statute which declares the liability ... asserted provides that the right of action shall survive the death of the injured [person]”).[1] That precedent has never been overruled.[2]
While the majority acknowledges the existence of the Court’s holding in Michigan Central, it brushes it aside because, “as states enacted legislation providing for survival, the common law rule changed.” Majority Op. at 1319.[3] The majority’s reliance on state law survival statutes to dis *1326 place the holding in Michigan Central cannot be correct. As the Michigan Central Court recognized, many states had passed statutes providing for survival upon the death of an injured plaintiff. It explained, however, that survivability of personal injury actions created by federal law depends only on Congress’s choice to provide for survival.[4]
The statutes of many of the states expressly provide for the survival of the right of action which the injured person might have prosecuted if he had survived, but unless this Federal statute which declares the liability here asserted provides that the right of action shall survive the death of the injured employee, it does not pass to his representative, notwithstanding state legislation. The question of survival is not one of procedure, but one which depends on the substance of the cause of action.
Mich. Cent., 227 U.S. at 67, 33 S.Ct. 192 (quotation marks omitted).
Nor does it matter, as the majority contends, that subsequent Supreme Court cases “nearly on point” provide for the survival of causes of actions when individuals other than an injured plaintiff die. Majority Op. at 1319-20. The equitable and common law considerations are different in those situations. None of the cases cited by the majority overrule or abrogate Michigan Central,[5] and we, therefore, should follow it.[6]
*1327 II
The majority further compounds its error by ignoring the plain language of 42 U.S.C. § 300aa-ll(b)(l)(A). That subsection states:
any person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, or the legal representative of any person who died as the result of the administration of a vaccine ... may, if the person meets the requirements of subsection (c)(1) of this section, file a petition for compensation under the Program.
42 U.S.C. § 300aa-ll(b)(l)(A). As that plain language demonstrates, Congress specified two types of individuals who may initially file a petition for compensation under the Program: individuals who have been harmed by a vaccine and legal representatives of individuals who have been harmed by vaccine. And Congress further specified particular classes of legal representatives that could file a petition: those who represent minors, those who represent disabled persons, and those who represent individuals who died from vaccine-related causes. The petition in this case, of course, does not fall into any of those categories, as Ms. Figueroa is the legal representative of an individual who died from non-vaccine-related causes.
The Supreme Court has instructed how to interpret a statute that includes such a specific listing of a related series of individuals who may access a remedy for a wrong through a particular process: the list of individuals should be read as exhaustive and exclusive of others “in circumstances supporting a sensible inference that the term left out must have been meant to be excluded.” Chevron U.S.A. Inc. v. Echazabal, 536 U.S. 73, 81, 122 S.Ct. 2045, 153 L.Ed.2d 82 (2002); see also Barnhart v. Peabody Coal Co., 537 U.S. 149, 168-69, 123 S.Ct. 748, 154 L.Ed.2d 653 (2003) (discussing that the canon expressio unius est exclusio alterius applies when a statute lists members of an “associated group or sei’ies” that go “hand in hand”); Nat’l R.R. Passenger Corp. v. Nat’l Ass’n of R.R. Passengers, 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974) (“[W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.” (citations and quotation marks omitted)). Such an inference is sensible here, for it is “fair to suppose that Congress considered [permitting petitions by other types of legal representatives] and meant to say no to it.” Marx v. Gen. Revenue Corp., — U.S. -, 133 S.Ct. 1166, 1175, 185 L.Ed.2d 242 (2013) (dis *1328 cussing how expressio unius est exclusio altenus applies if it is “fair to suppose that Congress considered the unnamed possibility and meant to say no to it”). In the Vaccine Act, Congress defined the particular process by which compensation for harms caused by vaccines would be compensated under the Program. In § 300aa-11(b)(1)(A), it delineated the legal representatives that would qualify to file a petition based on the type of individual whom they represented, including a type of deceased individual. It seems quite sensible, therefore, to conclude that Congress considered all the types of individuals for whom it wished to allow recovery under the Program through a petition by a legal representative and specifically chose to exclude individuals who died of nonvaccine related causes.[7]
The majority, however, insists that Congress could not have meant for the list of legal representatives in § 300aa-11(b)(1)(A) to be exhaustive because barring petitions from legal representatives like Ms. Figueroa would “make[ ] no sense” and would illogically “attribute to Congress a purpose to deny some claimants compensation while allowing compensation for others who suffer identical vaccine-related injuries.” Majority Op. at 1318. But the conclusion I reach, based on the clear statutory language, is neither nonsensical nor illogical; in fact, it is re-fleeted in how the Program routinely operates.
As first implemented, the Program limited compensation to those petitioners who died from vaccine-related causes or to those petitioners who suffered from a vaccine-related injury for more than six months. H.R. 5546, 99th Cong. § 2211(c)(1)(D), as amended, by, PL 100-203, December 22,1987,101 Stat 1330; see 42 U.S.C. § 300aa-ll(c)(l)(D) (current provision with similar restrictions). So if two individuals suffered identical vaccine-related injuries from the same batch of vaccines administered on the same day and one died five months later of vaccine-related causes but the other five months later from an unfortunate accident, only the individual who died from vaccine-related causes would be eligible for compensation under the Program. It is not nonsensical, in my view, to conclude that Congress desired that outcome and wanted to compensate only ongoing disability — which obviously would expire at death. See H.R. REP. 100-391, 698-99, 1987 (discussing how the Program was designed to be limited “to cases in which a person dies from the result of vaccine or in which a person incurs ... medical expenses ... and suffers ongoing disabilities ” (emphasis added)). Reading the Vaccine Act to determine the permissibility of petitions by cause of death is in no way abnormal or *1329 irrational in context of the whole Act; nor is it illogical or unfair to read § 300aa-11(b)(1)(A) to bar certain petitions from legal representatives based on the cause of death of the individuals whom they represent.
Despite that sensible reading of § 300aa-ll(b)(l)(A), the majority also claims that it discovered Congress’s “obvious” purpose for listing the legal representative of an individual who died from vaccine-related causes in § 300aa-ll(b)(l)(A): to enable recovery of the death benefit provided by the Program to the estates of individuals who died from vaccine-related causes. Majority Op. at 1322-23. I, unfortunately, cannot decipher how the majority reaches this conclusion. It juxtaposes disparate sections from legislation originating in separate houses of Congress to find meaning in the final language of the Vaccine Act. But comparing language from a draft bill in the Senate to language in a draft bill in the House reveals nothing about the meaning of the language in § 300aa-ll(b)(l)(A) without accounting for the hundreds of other differences in how recovery was limited in the multiple circulating drafts of the Program. For example, the Senate bill the majority relies upon provided that “[a]ny eligible person may, through counsel or otherwise, seek compensation under the Program.” S. 827, 99th Cong. § 2204(a). The majority suggests no reason why Congress failed to use that language, which certainly would have permitted legal representatives of estates to recover the death benefit. Moreover, the majority simply ignores that the House bill — and the language in it — was ultimately used because the Senate entirely removed the Program from its bill to “leave[] for resolution in the 100th Congress the still pressing issues of victim’s compensation and tort reform.” Senate Report 99-483, at 5, accompanying S. 827 as reported Sept. 24, 1986. Thus, the language in S. 827, upon which the majority’s rationale hinges, never even made it out of committee; it was removed because the Senate desired to postpone action and extend debate into the next Congress — not because it preferred the House’s language. Presented with obvious alternatives, it seems telling that the majority cannot find a single statement of intent in the thousands of pages of the legislative history of the Vaccine Act that supports the “obvious” purpose it declares for the language in § 300aa-ll(b)(l)(A).[8]
Ill
The majority’s opinion does not comport with either Supreme Court precedent or the plain language of the Vaccine Act. I respectfully dissent.

. The Supreme Court has only recognized one' — -unsurprising-—exception to that rule: if the defendant in a Bivens action caused the death of the plaintiff through his unconstitutional acts, the plaintiff’s claim survives his death. Carlson v. Green, 446 U.S. 14, 24-25, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). That holding simply extends to Bivens actions Congress's express abrogation of the common law rule for § 1983 actions. See 42 U.S.C. § 1988.

. The Supreme Court has directly applied the common law rule many times before and after its decision in Michigan Central. See, e.g., Florida ex rel. Vars v. Knott, 308 U.S. 506, 60 S.Ct. 72, 84 L.Ed. 433 (1939) (dismissing appeal because the cause of action abated at the death of the plaintiff); Seale v. Georgia, 209 U.S. 554, 28 S.Ct. 760, 52 L.Ed. 923 (1908) (same); Kaipu v. Pinkham, 206 U.S. 566, 27 S.Ct. 795, 51 L.Ed. 1191 (1907) (same); Beard v. Arkansas, 207 U.S. 601, 28 S.Ct. 258, 52 L.Ed. 359 (1907) (same).

.The majority asserts that "the common law [for survival] rule changed” because "states enacted legislation providing for survival.” Majority Op. at 1319. According to the majority, Congress therefore enacted the Vaccine Act in 1986 against "this changed legal background,” not the common law rule espoused by Michigan Central. Id. But the Supreme Court reaffirmed the continued applicability of Michigan Central four years after Congress *1326 passed the Vaccine Act. See Miles v. Apex Marine Corp., 498 U.S. 19, 32, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). And, although it did not expressly address the entire holding in Michigan Central, the Court in Miles reiterated that, "under common law,” a "[plaintiffs] personal [injury] cause of action does not survive the [plaintiff's] death.” Id. at 33, 111 S.Ct. 317. If in fact "th[at] common law rule changed” by 1986 as the majority asserts, the Supreme Court seems to have missed that point.

. Moreover, Congress knows how to provide, if and when it wishes, for survival of personal actions under federal law. See, e.g., Employer’s Liability Act, 45 U.S.C. § 59 (expressly providing for survival of an action); 28 U.S.C. § 2404 (authorizing survival of an action upon death of a defendant if the action was "commenced by or on behalf of the United States”); 42 U.S.C. § 1988 (modifying common law survivability for civil rights actions); 42 U.S.C. § 1986 (expressly creating right of survivorship for certain actions). Given the "presumption” of survivability they rely upon for their holding, the majority must view those provisions by Congress as completely unnecessary. I choose, however, to conclude that Congress added them because it believed them to be necessary. In fact, unlike the majority claims, exceptions to the common law rule that personal injury suits die with an injured plaintiff has never been uniformly established. See, e.g., Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1954 (3d ed. 2012) (discussing how the federal rule for the survivability of tort actions is not "well-established” and that the move by federal courts towards survivability of such actions is only a "dis-cernable trend”); Malcolm v. King, 686 So.2d 231, 235 (Ala.1996) (holding, in the context of a medical malpractice claim, that Alabama law dictates that "an unfiled tort claim will • generally not survive the death of the person with the claim"); Vulk v. Haley, 112 Idaho 855, 736 P.2d 1309, 1313 (1987) (holding that "an action for pain and suffering does not survive the death of the injured”); Minn.Stat. Ann. § 573.02, Subd. 2 (2006) (permitting trustee to only "maintain” a personal injury action after death of injured person for causes unrelated to the tortuous injury, but not file one).

. In Cox v. Roth, the Supreme Court discussed how forty-three states provided, by statute, that causes of actions survived the death of an alleged tortfeasor, but not a plaintiff. 348 U.S. 207, 210, 75 S.Ct. 242, 99 L.Ed. 260 (1955). The Court never addressed the effect of the death of an injured party. And in Van Beeck v. Sabine Towing Co., the Court held that an action for wrongful death survived the death of an estate's administrator, not an injured plaintiff. 300 U.S. 342, 349, 57 S.Ct. 452, 81 L.Ed. 685 (1937). In that case, the Court even stated that the injured party’s cause of action would have survived only because the relevant federal statute expressly provided for survival.
Nor is it compelling that some courts have relied on the Supreme Court’s holding in Ex *1327 parte Schreiber, 110 U.S. 76, 3 S.Ct. 423, 28 L.Ed. 65 (1884), to declare that remedial, but not penal, actions under federal law generally survive. Ex parte Schreiber simply does not stand for that broad proposition. The Ex parte Schreiber Court was discussing only the effect of the death of a tortfeasor on the survival of a plaintiff's cause of action. That should be clear from the Court’s later statement in Michigan Central that "[njothing is better settled than that, at common law, the right of action for an injury to the person is extinguished by the death of the party injured.” 227 U.S. at 67, 33 S.Ct. 192.

. The Supreme Court has declined to create the majority’s federal common law rule in the only case it decided since Michigan Central that presented such a rule. Robertson v. Wegmann, 436 U.S. 584, 587-88, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978) (holding that a federal civil rights action abated at death under Louisiana law and dismissing the Fifth Circuit’s creation of a federal common law rule for survival of remedial actions under federal law even though there was a "marked tendency of the federal courts to allow actions to survive”).

. For nearly two decades, the Court of Federal Claims has also interpreted § 300aa-11(b)(1)(A) to bar petitions from legal representatives of individuals who died of non-vaccine related causes. See Sigal v. Sec’y of Health & Human Servs., 2008 WL 2465790 (Fed.Cl.Spc.Mstr.2008) (not reported); Cohn v. United States, 44 Fed.Cl. 658, 659-60 (Fed.Cl.1999) (same); Conrad v. Sec’y of Health & Human Servs., 1:90-vv-2820, D.I. 44 (Fed.Cl.1997) (same) Buxkemper v. Sec’y of Dep't of Health & Human Servs., 32 Fed.Cl. 213, 223-25 (Fed.Cl.1994) (same). Fifteen years ago, we affirmed that interpretation of the Vaccine Act, and Congress has since amended the language of 42 U.S.C. § 300aa-l 1 twice without any change to subsection (b)(1)(A). Conrad v. Sec’y of Health & Human Servs., 1998 U.S.App. LEXIS 6155 (Fed.Cir.1998), cert. denied, 525 U.S. 820, 119 S.Ct. 61, 142 L.Ed.2d 48 (1998); see Vaccine injury Compensation Program Modification Act, Pub.L. 105-277, Div. C, Title XV, § 1502, 12 Stat. 2681-741 (Oct. 21, 1998) (amending the language of 42 USCA § 300aa-ll but not 42 U.S.C. § 300aa-11(b)(1)(A)); Children’s Health Act of 2000, Pub.L. 106-310, Div. A, Title XVII, § 1701(a), 114 Stat. 1151 (Oct. 17, 2000) (same).

. The majority claims that the Supreme Court has “often” engaged in similar analysis of Congressional purpose it does here. Majority Op. at 1324. It is no secret that the Supreme Court has, in certain cases, found meaning in drafting history. But in such cases, the Court relied on the clear import of drafting changes by Congress. As discussed, the import of “changes” found by the majority here is simply not clear.